310 P.2d 986]

[Crim. No. 5698.   Second Dist., Div. Three.   May 14, 1957.]

THE PEOPLE, Respondent, v. CHARLES HILMER NEEL, Appellant.

Gladys Towles Root, Eugene V. McPherson and Joseph A. Armstrong for Appellant.

Edmund G. Brown, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

( 1 )

WOOD (Parker), J.—Defendant was charged in Count I with grand theft of an automobile, and in Count II with violation of section 503 of the Vehicle Code (unlawfully driving an automobile without consent of the owner). In an amended information it was alleged that defendant had committed three felonies and had served terms of imprisonment therefor in federal prison. He denied the allegations as to prior convictions. At the beginning of the trial, Count II was dismissed on motion of the People. In a jury trial defendant was convicted on Count I; and the jury found that the allegations as to the three prior convictions were true. At the time of pronouncing sentence, the judge stated that he would disregard the second prior conviction and strike it, since there was a question whether defendant had served time in prison on that conviction (escape from federal penitentiary farm). Defendant appeals from the judgment and the order denying his motion for a new trial.

Appellant contends that the evidence was insufficient to establish grand theft; and that the court erred in instructing the jury.

Mr. Curtis, a salesman for the Maywood-Bell Ford Company, testified that on May 21, 1955, about 11:30 a.m., while he was on the used car lot of that company, he saw the defendant get out of a 1941 Ford which was parked on the street near that lot; defendant approached him and asked the price of a 1954 Mercury automobile which was on the lot; at that time defendant was accompanied by a woman with a child in her arms; Curtis said that the price was $2,995; defendant asked how much money was required for the down payment; Curtis said the minimum down payment required of a responsible person with good credit was $400; Curtis asked him what he did for a living; he replied that he was a railroad man; he showed identification documents to substantiate it; Curtis asked how long he had been on his job and whether he had the $400 with him and how he intended to handle the down payment; he replied that he had the money in a bank near the Maywood-Bell Ford Company, he liked the car, and he wanted to get the money to effect the transaction; he also said he felt he could handle the down payment of $400, and he would get it from the bank and bring it back; then defendant got into the Mercury car, said he would be right back, and he drove off the premises; the woman and child were in the car with him when he left; at that time the 1941 Ford was at the place on the street where defendant parked it when he came to the lot; Curtis did not

give defendant permission to do anything with the Mercury car other than to go to the bank and return with the car. On cross-examination, Curtis testified that May 21 was the first and only day he was employed by that company.

Mr. Plum, the assistant manager of the used car department of the Maywood-Bell Ford Company, testified that the Mercury car was missing from the place of business of the company at the end of the working day of said May 21.

Officer Carter testified that during his investigation of this case he was informed by the manager of the used car department of the Maywood-Bell Ford Company that a 1954 Mercury car was missing from that company; on August 26, 1955, he was informed by an agent of the Federal Bureau of Investigation as to the location of the Mercury; he went to Akron, Ohio, where he saw the defendant; an extradition hearing was held in Akron; on the plane en route to Los Angeles, defendant told the officer that he went onto the lot of the Maywood-Bell Ford Company and saw a 1954 car which he liked; it appeared to be in good shape and he thought it could make the trip; he told the man that he was going to the bank three blocks away and draw the deposit of $400 out of the bank; he had no money in the bank, so he went around the block and returned to a 1941 Ford which he had parked near the used car lot; then he transferred blankets and other articles from the Ford to the Mercury; he went to Las Vegas and then to Corning, Iowa, where he went off the road and collided with a pole and practically demolished one side of the car; he ordered a garage man to pull the car in and, being worried because he thought the police might make an investigation by reason of the accident, he went on a train to Aurora, Illinois; his wife and child went with him; from there he went to Chicago, then to Kansas City, and then to Akron where he got a job on a railroad; he intended to drop the car outside Akron, Ohio, and let the police find it; he took Oklahoma license plates off a car that was sitting along the road, and he put the California plates under the floor mat.

Defendant testified that he had been employed by the Los Angeles Junction Railroad about two and one-half months prior to May 21, 1955; on said date he drove an old Ford car to the front of the Maywood-Bell Ford Company and parked it; his wife and baby were with him; while he walked up and down the sidewalk, Curtis (the salesman) approached him and asked if he was interested in a car; defendant replied that he was interested but he had practically gone broke paying the hospital bill for his new baby; Curtis said that it would be no

trouble at all to finance a car, and that defendant could have as much time as he wanted; Curtis showed several cars to him, and they "centered" on a 1954 Mercury; Curtis backed the car out, pulled it up, had some whitewash taken off the window, and put gas in the car; Curtis explained how the new shift worked and handed the keys to him; defendant said that he had to get the down payment together, and he asked Curtis if he had any length of time; Curtis replied, "No, keep it as long as you need it," and "Take your wife out to the beach with your baby if you want to"; defendant asked, "If I have to go to Las Vegas or Yuma, I have friends in both places, I have been railroading in both towns, is that O.K.?" Curtis said, "Yes. If you leave the state, drop me a card from Yuma?" Defendant also testified that at the time he received the car keys he had no intention of taking the car and not paying for it; Curtis did not give him any specific time within which he was to bring the car back; Curtis did not tell him to bring the car back; when defendant drove the car out, Curtis stepped into the street to stop traffic so that defendant could turn onto the street; defendant did not have a bank account in Los Angeles County; he never intended to keep the car without paying for it; defendant left Los Angeles on May 24 or 25, and went to Corning, Iowa, where he was in a wreck; he had the car taken to a garage, told "them" whose car it was, and to repair it and notify the people; after he left Corning he wrote a letter telling "them" where the car was and what had happened; his purpose in leaving the state with the car was to get the down payment; he left his Ford car on the street in front of the Maywood-Bell Ford Company's place of business; he did not turn any papers over to Curtis concerning the Ford, and he did not sign any papers concerning the Mercury.

Appellant contends that the court, upon its own motion, should have given an instruction embodying the principle that to justify a conviction on circumstantial evidence the circumstances must not only be consistent with the theory of guilt but must be inconsistent with any other rational conclusion. Appellant argues that the automobile was delivered to him by the salesman; that appellant was allowed time within which to pay for the automobile; that he took it from the lot with the consent of the salesman; there was no evidence of a specific intent to steal the automobile; that it is as reasonable to assume that appellant, after failing to get the down payment, converted the automobile as it is to assume that he had the intent to steal it when he went upon the

lot or when he drove the automobile from the lot. The salesman testified to the effect that he gave the appellant permission to drive the automobile from the lot for the purpose of going to the bank. The evidence as to whether appellant intended to steal the automobile or to pay for it was, of course, circumstantial. In *People* v. *Yrigoyen,* 45 Cal.2d 46 [286 P.2d 1], wherein defendant was charged with issuing a check with intent to defraud, the prosecution relied upon circumstantial evidence to show criminal knowledge and intent. In that case the court said, at page 49 : ''The principal question is whether, in the absence of a request by defendant, the trial court erred in failing to give an instruction that to justify a conviction on circumstantial evidence, the facts and circumstances must not only be entirely consistent with the theory of guilt but must be inconsistent with any other rational conclusion.'' In that case a judgment of conviction was reversed for failure to give such an instruction. In *People* v. *Wales,* 136 Cal.App.2d 846 [289 P.2d 305], the question was whether the defendant, a physician, intended to procure an abortion. It was said therein (p. 854) that, in the matter of determining defendant's belief and intent, the prosecution relied substantially upon circumstantial evidence. It was also said therein (p. 855) that the court erred prejudicially in refusing to give such an instruction as the one referred to in the present case. In *People* v. *Bender,* 27 Cal.2d 164 [163 P.2d 8], it was said, at page 175 : ''It cannot be too strongly emphasized that such quoted statement [referring to statement to effect that circumstantial evidence must not only be consistent with theory of guilt but must be inconsistent with any other rational conclusion] enunciates a most important rule governing the use of circumstantial evidence. In unequivocal language it should be declared to the jury in every criminal case wherein circumstantial evidence is received.'' In the present case, the trial court erred prejudicially in failing to give, upon its own motion, an instruction embodying the principle that to justify a conviction on circumstantial evidence the facts and circumstances must not only be entirely consistent with the theory of guilt but must be inconsistent with any other rational conclusion.

In view of the above conclusion, it is not necessary to discuss other contentions on appeal.

The judgment and the order denying the motion for a new trial are reversed.

Shinn, P. J., and Vallée, J., concurred.