[Crim. No. 6898.   Second Dist., Div. One.   May 19, 1960.]

THE PEOPLE, Respondent, v. PETE LOMBARDO, Appellant.

Harold J. Ackerman for Appellant.

Stanley Mosk, Attorney General, and Jack E. Goertzen, Deputy Attorney General, for Respondent.

WOOD, P. J.—In a jury trial defendant was convicted of first degree burglary. He appeals from the judgment and sentence.

Appellant contends that the court erred in failing to give, upon its own motion, certain instructions regarding circumstantial evidence and extrajudicial admissions.

Mr. and Mrs. Wiles resided in an apartment on the second floor of an apartment building in Los Angeles. They were absent from their apartment from December 24 to December 28, 1958. Mrs. Wiles testified that when they left the apartment on December 24 they locked the doors of the apartment; they did not give anyone permission to enter the apartment while they were gone; when they returned on December 28 she noticed that the varnish near the lock of the apartment door had been scraped by a sharp instrument, and there were dirty footprints on the carpet, but nothing was missing from the apartment.

Mrs. Kistler testified that she resided in an apartment which was below the apartment of Mr. and Mrs. Wiles; she thought they were away on the evening of December 27; about 7:45 o'clock that evening she heard footsteps in the Wiles apartment; she and Mr. Stowell went to the door of that apartment, and Mr. Underwood went to the landing on the stairway; the door of the Wiles apartment was ajar about half an inch; she rang the doorbell and at that time the door closed; then she went downstairs to ask the manager to call the police; while she was talking to the manager two men walked down the stairway; they went past Mr. Stowell and Mr. Underwood, who were on the stairway, and they went past her while she was at the door of the manager's office; then she yelled, "Police"; when they arrived at the front door they ran down the outside steps and down the street; they ran past two or three houses, then crossed the street, and disappeared back of a building; one of the men was about 6 feet tall and was wearing a black fedora and dark clothing; the other man was about 5 feet tall and was wearing a gray sportcoat; the shorter man (second man above described) was the defendant Lombardo.

Mr. Stowell testified that on the evening of December 27, 1958, while he was in the apartment of Mrs. Kistler, he heard footsteps overhead; he and Mrs. Kistler went to the door of the Wiles apartment; he saw that the door was slightly ajar; Mrs. Kistler rang the doorbell and at that time the door closed; Mrs. Kistler went downstairs, and he went down to the middle landing of the stairway where he watched the door that had closed; the door opened, and he saw two men come out of the apartment and rush down the stairway; they were running as they passed him; they ran out of the building; he followed them down the street about 300 feet, and then across the street and in and out of driveways until the taller man jumped over a hedge and the shorter man ran around the hedge; then he (witness) lost sight of them; the taller man was wearing a black felt fedora, glasses, and dark clothing; the shorter man was wearing a gray sportcoat; the defendant Lombardo is one of those men; Mr. Stowell (witness) returned to Mrs. Kistler's apartment; about 10 p.m. an officer brought a coat to the door of Mrs. Kistler's apartment; he (witness) went outside where officers had two men in custody; one of those men was defendant Lombardo; he was one of the men who came out of the apartment and ran down the stairway.

Officer Smith and another officer, in response to a radio call,

went to the apartment house about 8:15 p.m. on December 27, 1958; at that place they talked to uniformed officers, Mr. Stowell, and other persons; he and the other officer followed the apparent trail of the burglary suspects behind several houses, and found a flashlight and a fedora; thereafter the officers waited about two hours in a police automobile at a place about a block from the apartment house; then they saw a Pontiac automobile go slowly down the street, turn the corner, and later return; it stopped approximately in front of the apartment house, and parked for a few seconds beside a parked automobile; they saw a person get out of the Pontiac and get into a Dodge; then the two automobiles were driven away; Officer Smith and the other officer followed them for a distance of approximately five blocks, and then the drivers attempted to park the two automobiles; the officers turned a red spotlight on them, and the Dodge went away and the Pontiac stayed there; the other officer remained there with the man who was in the Pontiac; Officer Smith followed the Dodge about two blocks and stopped it, after having used the red light and siren of the police automobile; the driver of the Dodge was defendant Lombardo; Officer Smith arrested him about 10:40 p.m., and took him to the Pontiac automobile; then the officers took the two men to the apartment house.

Officer Smith testified further that the other officer asked defendant Lombardo why he parked near the apartment house; defendant replied, as follows: he had a girl friend living nearby; he and the girl went in her automobile to a motel south of town, and later she took him to Manchester and Crenshaw Boulevards (several miles from the apartment house); then he asked a friend (Joe Mancino) to take him back to his parked automobile; he (defendant) had not been in the apartment referred to herein.

Mr. Underwood, who was subpoenaed by the prosecution, was called as a witness by the defendant. He testified that he was at Mrs. Kistler's apartment on December 27; when Mrs. Kistler and Mr. Stowell went up the stairway, he followed them to the first landing; Mrs. Kistler rang the doorbell of an apartment, where the door was ajar; then the door closed; he saw two men come out of that door, come down the stairway, and go out of the building; about 10:30 p.m. he saw two men with police officers, but he could not identify the men.

Defendant testified that on said December 27, about 4 p.m., he parked his Dodge automobile in the vicinity of the apart-

ment house referred to herein; at that time he had an appointment with a lady at a place about a block from his parked automobile; he and the lady went in her automobile to a café in east Los Angeles (several miles from the apartment house), arriving there about 5:30 p.m.; they left the café about 7 p.m. and went to Manchester and Crenshaw Boulevards (several miles from the café and the apartment house); about 10 p.m. the lady left him at that intersection, and she went to meet her husband in Gardena; he asked Joe Mancino to take him to the place where his (defendant's) automobile was parked; they went in Joe's automobile to the area where defendant had parked his Dodge, but they drove around the block twice while trying to find the Dodge; Joe stopped his automobile by the side of the Dodge and waited until defendant started the Dodge motor; Joe drove away, and defendant followed him; after they had gone about five blocks, Joe stopped and then defendant stopped at the side of Joe's automobile; Joe said that defendant had left his coat in Joe's automobile; then defendant saw "the red light" (of the police automobile) behind his automobile; he thought he was in the way of that automobile, and for that reason he drove away; the automobile with the red light followed him about two blocks, and when he heard the siren he stopped; the officer took him to Joe's automobile; then the officers took defendant and Joe to the apartment house referred to herein; a man (Mr. Stowell) who came out of the apartment house said, "That's him [referring to defendant]."

On cross-examination, the defendant said that on the following morning, at the police station, he told Officer Dennis that on the previous evening he had gone with a woman to a motel, registered there, and stayed there until about 10 p.m.; he also told the officer that he would not tell the name of the woman. Also, on cross-examination, he refused to state the name of the woman or the name of the motel.

Officer Dennis testified, in rebuttal, that on December 29 he told defendant that if the officers could locate the motel they would take him there and check the register, and if they "could check out his story," they would release him immediately; that defendant refused to divulge the name of the motel.

Joe Mancino was released on the same evening he was arrested.

■■ Appellant contends that the court, upon its own motion, should have given an instruction embodying the principle

that to justify a conviction on circumstantial evidence the circumstances must not only be consistent with the theory of guilt but must be inconsistent with any other rational conclusion. He argues to the effect that since nothing was missing from the apartment, the evidence regarding intent to commit burglary was circumstantial and therefore the court should have given such an instruction on circumstantial evidence even though appellant did not request it. He cites *People* v. *Neel,* 151 Cal.App.2d 1 [310 P.2d 986], wherein a judgment of conviction of theft of an automobile was reversed on the ground that the evidence as to intent was circumstantial and the court of its own motion should have given such an instruction on circumstantial evidence. The evidence in that case as to intent was materially different from the evidence in the present case as to intent. In that case an automobile salesman testified that he gave the defendant permission to drive the automobile from the sales lot for the purpose of going to a bank to get money for the down payment on the automobile. The defendant therein testified to the effect that the salesman gave him permission to take the automobile for an indefinite period of time to obtain the down payment, and gave him permission to take the automobile to Las Vegas or Yuma; that he (defendant) did not intend to take the automobile and not pay for it. On appeal therein, defendant asserted that it was as reasonable to assume that he, after failing to get the down payment, converted the automobile as it was to assume that he had the intent to steal it when he drove the automobile from the lot. On that appeal it was said that the evidence as to whether appellant intended to steal the automobile or to pay for it was, of course, circumstantial. In that case the principal issue was the question as to the intent of the defendant—it was conceded therein that he took the automobile with the consent of the salesman, but the issue was whether appellant intended to steal it. In the present case it is to be noted that appellant did not testify relative to "intent" in entering he apartment —on the contrary, his alleged defense was an alibi and he testified that at the time of the alleged burglary he was at a place which was several miles from the apartment. He told the officers that he had not been in the apartment.

In the present case there was direct evidence that appellant came out of the apartment and ran down the stairway, and ran out of the apartment house; then, while he was being pursued by Mr. Stowell, he ran down the street, in and out of driveways, around a hedge, and disappeared. Also, there was

direct evidence that about two hours later the appellant returned to his automobile which was parked near the apartment house, and then he drove the automobile approximately five blocks to a place where a red spotlight of a police automobile was turned onto the rear of appellant's automobile. Also, there was direct evidence that when that red light appeared, the appellant drove his automobile away and, although he was being pursued by the police automobile, he continued driving for a distance of approximately two blocks. It thus appears that there was direct evidence that appellant was in the apartment, and that he fled therefrom when Mrs. Kistler and two men began an investigation of conditions at the apartment, and that appellant fled from the police when a police automobile came to the rear of his automobile. The direct evidence herein placed appellant in such an incriminating position that it is not reasonable to believe that a different verdict would have been returned if the court, of its own motion, had given such an instruction on circumstantial evidence as the one under discussion.

In *People* v. *Bletson,* 117 Cal.App.2d 731 [256 P.2d 614], wherein the defendant was convicted of attempted burglary, there was direct evidence that about 11 p.m. the defendant was standing on a 5-foot-high box next to a window of a dwelling house at a time when the glass of the window was crashed; and after the defendant was arrested by officers (who saw him on the box) he asked them to give him a break, he offered a bribe to them, and when he was in the police automobile he attempted to escape. In that case it was said, at page 734: ''Reversible error is predicated upon the trial court's failure to give the jury instructions on circumstantial evidence. Various cases are cited in which a failure to give such instructions has been deemed prejudicial error, particularly where there was but slight circumstantial evidence of guilt. However, as pointed out in respondent's brief, such is not the situation in the instant case. A failure to give such an instruction is not necessarily fatal. Direct evidence placed the appellant in such an incriminating situation at almost the very moment that the window was broken, that there is no reason to believe that a different verdict would have been returned had the requested instruction been given. Corroborating circumstances including the attempted escape and bribery offers necessarily reinforce this conclusion. Whatever may be the situation in other cases, in the present prosecution

the failure to give the instruction in question cannot be deemed prejudicial."

In the present case a proper instruction defining direct and circumstantial evidence was given.

In *People* v. *Williams,* 153 Cal.App.2d 5 [314 P.2d 161], it was said, at page 9 : "Finally, appellant cites as prejudicial error the court's failure to give of its own motion more complete instructions on circumstantial evidence. Such criticism is not justified. . . . While there is no showing that further instructions with regard to circumstantial evidence should have been given, it cannot be gainsaid that where circumstantial evidence is relied upon to prove the commission of the crime, the court should give complete instructions with regard to such evidence. [Citation.] But such evidence was not solely relied upon. Not only did appellant flee the scene when stopped by the officer, but he admitted later that when . . . the special officer approached him, he decided to depart. Also, he was identified by two witnesses who saw him in the driver's seat of the car that bore the stolen goods. . . . All facts considered, it cannot be said that the omitted instruction would have effected a different result. . . . The direct evidence is so incriminating that the reading of instructions on circumstantial evidence would have served only to obscure the issue of guilt."

In *People* v. *Schwab,* 136 Cal.App.2d 280 [288 P.2d 627], it was said, at page 289: "Appellant assigns as prejudicial also the court's refusal to give an instruction as to evidence susceptible of two constructions. His point is that the only evidence of his intent to commit the crimes charged was circumstantial and that, therefore, he was entitled to have such instructions given, citing . . . . But appellant misses the point of such authorities. They authorize such instruction only where substantially all the evidence is circumstantial. Such is not true of the controversy here involved. Such instruction is not necessary where the direct evidence of defendant's guilt is clear. [Citations.] From such pronouncements, it is established that whether such an instruction is required depends upon the evidence in the case."

In the present case the direct evidence was so incriminating that it cannot properly be said that the court erred prejudicially in failing to give, of its own motion, such an instruction on circumstantial evidence as the one under discussion here.

Appellant also contends that the court erred in failing to give, of its own motion, an instruction to the effect

that extrajudicial admissions must be viewed with caution. He argues to the effect that an extrajudicial admission, with respect to which such an instruction should have been given, was the statement of appellant (to an officer) that he asked his friend (Joe) to take him to his (appellant's) parked automobile. Appellant argues further that the prosecution's purpose in introducing such statement was to show that appellant had been in "the area of the crime" and to show consciousness of guilt. It is to be noted that the evidence shows that Officer Smith saw appellant in "the area of the crime" before appellant had been apprehended and, of course, that was before appellant had made any statement. Furthermore, appellant testified that he had asked his friend Joe to take him to the place where his automobile was parked because his automobile "wasn't starting very good." Under such circumstances the court was not required to give an instruction that extrajudicial admissions must be viewed with caution. It is not asserted that any other statement of appellant was an extrajudicial admission. There were no extrajudicial admissions of guilt. The extrajudicial statements of appellant were in effect denials.

Appellant has appealed from the judgment and sentence. ▮ "Affirmance of the judgment carries with it affirmance of the sentence." (*People* v. *Perkins,* 147 Cal.App.2d 793, 798 [305 P.2d 932].)

The judgment is affirmed.

Fourt J., and Lillie, J., concurred.