[Crim. No. 5682. In Bank. July 29, 1955.]

THE PEOPLE, Respondent, v. FRANK YRIGOYEN, Appellant.

J. Everett Barr for Appellant.

Edmund G. Brown, Attorney General, Doris H. Maier and Frederick G. Girard, Deputy Attorneys General, for Respondent.

GIBSON, C. J.—A jury found defendant guilty of issuing a check with intent to defraud and with knowledge that there were not sufficient funds or credit for its payment upon presentation in violation of section 476a of the Penal Code.* He appeals from the judgment of conviction, claiming that

---

*Section 476a of the Penal Code provides in part: ''Any person who for himself or as the agent or representative of another or as an officer of a corporation, willfully, with intent to defraud, makes or draws or utters or delivers any check, or draft or order upon any bank or depositary, or person, or firm, or corporation, for the payment of money, knowing at the time of such making, drawing, uttering or delivering that the maker or drawer or the corporation has not sufficient funds in, or credit with said bank or depositary, or person, or firm, or corporation, for the payment of such check, draft or order, in full upon its

the evidence does not show guilty knowledge or intent to defraud and that the trial court erred in failing to give an instruction on circumstantial evidence.

On October 7, 1950, defendant gave Pierre Mendiboure a check drawn on a Healdsburg bank in the sum of $11,260 as final payment on the purchase price of cattle. At the time the check was issued, and also when it was presented for payment on October 14, there was less than $1,100 in the account which defendant maintained in that bank. The check was dishonored because of insufficient funds.

After contracting with Mendiboure to purchase the cattle, defendant agreed to resell them to John Lucas. Defendant and Lucas testified that they went to the Healdsburg bank on October 5, where Lucas made out a check in defendant's favor for $8,000, as a partial payment, and that defendant instructed the manager to deposit the check in the account for the purpose of covering the check to be given to Mendiboure. Lucas took delivery of the cattle on October 9 and that afternoon gave defendant's bookkeeper a check in the sum of $5,566 for the balance of the resale price. The bookkeeper testified that the next morning he went to the bank to deposit the $5,566 check, that he there saw the $8,000 check which had not yet been deposited, and that he then deposited both checks.

The bank manager testified that to his knowledge defendant made no credit arrangement to honor the Mendiboure check. The only day in October on which there were sufficient funds in the account to pay the check in question was the 10th when the sum of $13,566 received from Lucas was deposited. Several checks drawn on the account were cashed between the 10th and the 14th including two totaling over $10,000 issued by defendant to the Modoc Auction Company and paid at the bank in Healdsburg on the 11th and 13th. It is not clear from the record whether these two checks were drawn before or after the check in question.

During the two and one-half years which elapsed between dishonor of the check and the filing of the information in this action, defendant gave Mendiboure eight registration

presentation, although no express representation is made with reference thereto, is punishable by imprisonment in the county jail for not more than one year, or in the state prison for not more than fourteen years. . . . The word 'credit' as used herein shall be construed to mean an arrangement or understanding with the bank or depositary or person or firm or corporation for the payment of such check, draft or order. . . .''

slips for motor vehicles to "secure him" and also paid him $3,000 to apply against the amount defendant owed him.

 The evidence is sufficient to show that there were not enough funds in the account when the check in question was issued or presented and that no credit arrangement was made for its payment. It can be inferred that defendant knew the depleted· condition of the account, and, under the circumstances, the record supports the implied finding that he issued the check with intent to defraud Mendiboure. (*People* v. *Wallin,* 34 Cal.2d 777, 780 [215 P.2d 1] ; *People* v. *Rose,* 9 Cal.App.2d 174, 175-176 [48 P.2d 1009] ; see *People* v. *Boyce,* 87 Cal.App.2d 828, 829-830 [197 P.2d 842].)

The principal question is whether, in the absence of a request by defendant, the trial court erred ▪in failing to give an instruction that to justify a conviction on circumstantial evidence, the facts and circumstances must not only be entirely consistent with the theory of guilt but must be inconsistent with any other rational conclusion. **[2]** In a criminal case the trial court is required to instruct the jury of its own motion upon the law relating to the facts of the case and upon matters vital to a proper consideration of the evidence. (*People* v. *Buffum,* 40 Cal.2d 709, 724 [256 P.2d 317] [requiring an instruction on the necessity for corroboration] ; *People* v. *Putnam,* 20 Cal.2d 885, 890-891 [129 P.2d 367] [requiring a cautionary instruction in a case involving a sexual offense].) In accordance with this rule we declared in *People* v. *Bender,* 27 Cal.2d 164, 174 et seq. [163 P.2d 8], that the court on its own motion should have given an instruction embodying the principle that to justify a conviction on circumstantial evidence the facts and circumstances must not only be entirely consistent with the theory of guilt but must be inconsistent with any other rational conclusion. (See also *People* v. *Koenig,* 29 Cal.2d 87, 93 [173 P.2d 1].) It is true that in the Bender case proof of guilt was entirely circumstantial, whereas in the present case there was direct evidence that defendant issued the check without sufficient funds in or credit with the bank, and circumstantial evidence was relied upon to show his criminal knowledge and intent. However, in the Bender case, it is stated that where circumstantial evidence is substantially relied upon for proof of guilt, adequate instructions on the rules governing the application of such evidence must be given. (27 Cal.2d at p. 175.) And it has been held that the instruction must be given where criminal knowledge is shown only by cir-

cumstantial evidence. (*People* v. *Candiotto*, 128 Cal.App. 2d 347, 355-356 [275 P.2d 500].) Cases holding that the instruction need not be given, even upon request, where circumstantial evidence is only incidental or corroborative are not, of course, applicable here. (See *People* v. *Jerman*, 29 Cal.2d 189, 197 [173 P.2d 805]; *People* v. *Alexander*, 92 Cal.App.2d 230, 235 [206 P.2d 657].)

The evidence with respect to defendant's intent to defraud Mendiboure is conflicting. Had the instruction in question been given, the jury might have concluded that the circumstantial evidence, while entirely consistent with defendant's guilt, was also consistent with a rational conclusion that he was innocent. Upon an examination of the entire record, we are of the view that the failure to give the instruction resulted in a miscarriage of justice.

The judgment is reversed.

Shenk, J., Carter, J., Traynor, J., and Schauer, J., concurred.