[Crim. No. 6298.   Second Dist., Div. Two.   Jan. 20, 1959.]

THE PEOPLE, Respondent, v. EDWIN B. ROBERTS, Appellant.

Harold J. Ackerman for Appellant.

Edmund G. Brown, Attorney General, and Arthur C. deGoede, Deputy Attorney General, for Respondent.

HERNDON, J.—After a jury trial, appellant was convicted of (1) knowingly issuing a check with insufficient funds and with intent to defraud (Pen. Code, § 476a) and (2) grand theft of an automobile (Pen. Code, § 487, subd. 3.). He had admitted a prior felony conviction of incest. He appeals from the judgment and from the order denying his motion for a new trial.

In the early part of March, 1956, appellant went to Mike McCarthy Lincoln-Mercury Company (hereinafter referred to as McCarthy) and after discussion with a salesman signed an order for a new car with specified accessories for the stated price of $3,700 "plus." When appellant suggested making a deposit of $100, the sales manager stated that he wouldn't order such a car from the factory without a larger deposit. The following day appellant made a deposit of $425 whereupon McCarthy ordered the car from the factory.

. On March 26, 1956, having received notice that his car had arrived, appellant went to the McCarthy agency to take deliv-

ery. He informed the sales manager that he was going to finance the car with the Automobile Club to the extent of $2,500 and that he would make up the difference with a down payment. Advised that the required down payment would be $1,037.52, he made out, signed and delivered to McCarthy's sales manager a counter check in that amount drawn on the Bank of Encino. At the same time he signed in blank a conditional sales contract bearing the notation "Until check arrives, $2,500 from Auto Club due 4-1-56." He indicated that he would go to the Automobile Club and make arrangements to finance the $2,500 and that this amount would be sent to McCarthy in due course. The sales manager testified that he relied on the validity of the check in allowing the appellant to take the automobile.

The records of the Bank of Encino disclosed that on the date the check was issued, appellant had no account, but that on March 28, 1956, he opened an account with a balance of $661.08. Appellant had no other account with the bank at that time, and had made no arrangements for the extension of credit. A $500 check which was a part of the opening deposit was dishonored and returned on April 2, 1956. As of April 20, 1956, the balance in the account had declined to $12.11. McCarthy received no word from either appellant or the Automobile Club after March 26. The check given by appellant to cover the down payment on the automobile was returned to McCarthy dishonored after about five days. During the next three weeks representatives of the McCarthy Agency went to appellant's residence 10 or 12 times in an effort to locate appellant, but found no one at the address, although furniture was observed therein. Messages left at appellant's address were unanswered. McCarthy repossessed the automobile in Fresno, California, sometime in May, 1956.

Appellant testified in substance: that the check for $1,037.52 was to be used only after appellant notified McCarthy that it might be cashed; that he told the sales manager that he did not have the money at the time, but would be getting some within a few days; that the sales manager said: ". . . give me a check for it . . . and I will hold the check until you give me an o.k. to put it in the bank. And in case in the event that you don't, we'll finance it through our own financing institution"; that when the appellant told the sales manager he did not have a bank account, the latter stated ". . . surely you will have a bank account"; that it was appellant's understanding that the blank conditional sales contract was signed

so that if the check could not be covered, or the Automobile Club loan was not realized, financing would be completed through the use of the conditional sales contract; that appellant was employed and had reasonable expectations of receiving sufficient funds to cover the check; that he never intended to defraud McCarthy, but fully intended to make the check good when he issued it.

■ Our recital of the facts sufficiently refutes appellant's contention that the evidence is insufficient as a matter of law to sustain the judgment. (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778].) Implicit in the verdict of the jury is a rejection of appellant's testimony that he issued the check in good faith and upon the understanding that its delivery and use were conditional upon further authorization. (*Cf. People* v. *De Paula,* 43 Cal.2d 643, 649 [276 P.2d 600].) ■ Intent to defraud is a question of fact. (*People* v. *Leon,* 163 Cal. App.2d 791, 793 [329 P.2d 996].) Such intent may be inferred from the conduct of the accused or from the circumstances surrounding the transaction. (*People* v. *Leon, supra*; *People* v. *Markos,* 146 Cal.App.2d 82, 85 [303 P.2d 363].)

■ A more serious question is presented by appellant's contention that the trial court erred in failing upon its own motion to give ". . . an instruction embodying the principle that to justify a conviction on circumstantial evidence the facts and circumstances must not only be entirely consistent with the theory of guilt but must be inconsistent with any other rational conclusion." (*People* v. *Yrigoyen,* 45 Cal.2d 46, 49 [286 P.2d 1]; see CALJIC Number 27.) Appellant was represented at the trial by counsel, at whose request the court gave CALJIC Number 26, which reads as follows: "If the evidence in this case [as to either count] is susceptible of two constructions or interpretations, each of which appears to you to be reasonable, and one of which points to the guilt of the defendant, and the other to his innocence, it is your duty, under the law, to adopt that interpretation which will admit of the defendant's innocence, and reject that which points to his guilt. You will notice that this rule applies only when both of the two possible opposing conclusions appear to you to be reasonable. If, on the other hand, one of the possible conclusions should appear to you to be reasonable and the other to be unreasonable, it would be your duty to adhere to the reasonable deduction and to reject the unreasonable, bearing in mind, however, that even if the reasonable deduction points to defendant's guilt, the entire proof must carry the

convincing force required by law to support a verdict of guilt" and CALJIC Number 28, which reads as follows: "When the case which has been made out by the People against a defendant rests entirely or chiefly on circumstantial evidence, and in any case before the jury may find a defendant guilty basing its finding solely on such evidence, each fact which is essential to complete a chain of circumstances that will establish the defendant's guilt must be proved beyond a reasonable doubt." Counsel made no request for CALJIC Number 27 in either form or substance.

Appellant relies on *People* v. *Yrigoyen, supra,* 45 Cal.2d 46 [a prosecution for issuing a check with insufficient funds] and *People* v. *Neel,* 151 Cal.App.2d 1 [310 P.2d 986] [grand theft of an automobile] in which judgments of conviction were reversed on the ground that the trial court committed prejudicial error in failing *sua sponte* to give an instruction to the effect that to find the defendant guilty on circumstantial evidence alone the proved circumstances must be irreconcilable with any other rational conclusion than that of guilt.

In both of these cases, however, the trial court had failed to give *any* instruction to the jury on the interpretation of circumstantial evidence, although the People's evidence as to the defendant's criminal intent was necessarily circumstantial. The instant case presents quite a different situation. Assuming that an instruction embodying the substance of CALJIC Number 27 should have been given the jury, the question before us is whether the appellant was prejudiced by the trial court's failure to act on its own motion to give more complete instructions to supplement those requested by the defendant. In considering this question we note that the instruction which appellant now contends should have been given (CALJIC Number 27) is found in the one-volume text under the heading *"Circumstantial Evidence"* from which counsel for appellant presumably selected and requested CALJIC Numbers 26 and 28, which were given the jury. The failure of appellant's counsel to request CALJIC Number 27 indicates to us that he consciously and purposefully rejected that instruction, possibly under the belief that the other instructions requested and given would better serve his client's interest. CALJIC Number 26 required the jury to give the defendant the benefit of any reasonable interpretation of the evidence which was favorable to his innocence, and CALJIC Number 28 informed the jury that each fact essential to an incriminating chain of

circumstances must be proved beyond a reasonable doubt. (*Cf.* *People* v. *Webster*, 79 Cal.App.2d 321, 328-329 [179 P.2d 633].)

Precisely the contention now made by appellant was rejected in the recent case of *People* v. *Barkoff*, 163 Cal.App.2d 639 [329 P.2d 1005], (hearing denied). In that case the defendant was convicted in a jury trial of two counts of abortion. The facts were not involved: the defendant admitted inserting a pessary (a contraceptive device which may induce abortion) in the body of the prosecution's female witness, and ". . . the main issue was the intent with which he did it—was it for purposes of abortion as claimed by the prosecution, or for contraceptive purposes, as claimed by the defendant?" (P. 643.) At the defendant's request the court gave CALJIC Number 26, but did not give Numbers 27 or 28 on circumstantial evidence. On appeal, as in the instant case, the defendant contended that the court *sua sponte* should have given CALJIC Number 27 or a similar instruction. After a comprehensive review of the applicable precedents, the court concluded that the failure to give CALJIC Number 27 was not prejudicial to the defendant. In affirming the judgment of conviction the court remarked: "While CALJIC Number 27 should have been given, the failure to do so under the circumstances here was not prejudicial. The court did give CALJIC Number 26 which while not as strong as CALJIC Number 27 did require the jury to give the defendant the benefit of any reasonable interpretation of the evidence favorable to his innocence. In the second place and more important, the evidence of defendant's guilt, although circumstantial, is overwhelming. It just is not reasonable to expect any reasonable person to believe under the circumstances of this case that defendant, having been told that the women were pregnant, inserted the pessaries for contraceptive purposes. It is inconceivable that had the jury been given CALJIC Number 27 in addition to CALJIC Number 26, any different result would have followed." (*People* v. *Barkoff, supra*, at pp. 644-645.)

In the instant case the jury refused to believe the defendant's testimony as to the circumstances under which he gave a check on a nonexistent bank account and found him guilty as charged. Since the jury rejected defendant's version of the transaction, it is inconceivable that the giving of the additional instruction on the subject of circumstantial evidence would have had any effect on the result. (*People* v. *Watson*, 46 Cal. 2d 818, 836 [299 P.2d 243]; *People* v. *Bender*, 27 Cal.2d 164

[163 P.2d 8] ; see *People* v. *Williams,* 153 Cal.App.2d 5, 9 [314 P.2d 161].)

■ Appellant's third contention is that the deputy district attorney was guilty of prejudicial misconduct in arguing to the jury that on the basis of defendant's admission of the prior felony conviction of incest he was an immoral person. The following are the portions of the argument of the district attorney of which the appellant now complains: "That man [the defendant] has been convicted of a felony. Now, it's very rare that this is allowed to be shown; only in cases of impeachment can a man's past record be brought up, and only in regard to felonies can it be brought up. But it is permissible to show it. In this felony, true it is not connected in any way with this case; but that's a felony that violates every written law and every moral law, and yet, that man sat upon this witness stand and has taken an oath to God, and Mr. Stanton wants you to believe that man over these other people and over the physical facts and physical evidence. Well, that can be done.

"Now, there's a little bit more about Mr. Roberts. He's not only been convicted of a felony, which violates, as I said, the moral and written law; but he's told you some things up on the witness stand that I don't think are quite what he wanted you to believe. . . .

"Before I close, let me just say this. The case actually really boils down a lot to the matter of credibility; boils down to who you are going to believe. And it boils down to what type of character, what—is this man a savoury character or unsavoury character? I think you can consider that in deciding. And again you can consider the man's prior conviction of incest."

Conceding, *arguendo,* that the comments of the deputy district attorney might have exceeded the bounds of propriety, the failure of appellant to make any objection or assignment of misconduct or to move for a mistrial or to seek any instruction admonishing the jury to disregard the allegedly improper argument should preclude a reversal on this ground. (See *People* v. *Moore,* 143 Cal.App.2d 333, 338 [299 P.2d 691].) Moreover, each of the deputy district attorney's statements concerning the prior conviction was made solely in reference to the question of appellant's credibility. (*Cf. People* v. *Brain,* 17 Cal.App.2d 141, 143 [61 P.2d 806].)

■ Appellant's fourth contention is that the trial court erred in failing to instruct the jury upon the elements of the

crime of theft. The trial court instructed the jury that "It is the law of this state that every person who shall feloniously steal, take or drive away the automobile of another is guilty of grand theft regardless of the value of the vehicle." Appellant points out that the court failed to give instructions covering the general definition of theft, intent in theft cases, the definition of larceny by trick and device or the definition of theft by false pretenses. However, appellant made no request for any of these instructions, and it does not appear that the failure of the court to give them *sua sponte* should be regarded as prejudicial error under the circumstances of this case. The cases cited by appellant do not appear to sustain his contention.

■ Finally, appellant argues that the trial court erred in failing to instruct the jury that an oral extrajudicial admission of the defendant should be viewed with caution. The only statement alluded to in appellant's brief as constituting an extrajudicial admission is the following attributed to appellant in the testimony of the arresting officer: "He was asked when he opened that bank account, and he stated that he opened it approximately the later part of February or the first of March..."

There seems to be no merit in this contention for two reasons. In the first place, appellant did not request the instruction, and, in the second place, the quoted statement attributed to appellant did not constitute any admission of guilt. It is uncontradicted that appellant opened his account with the drawee bank in the latter part of March.

It should be observed that many of the questions presented on the instant appeal revolve about appellant's contentions that the trial court, on its own motion, should have given certain instructions even though the defendant did not request them. Appellant was represented by counsel in the trial court, and his failure to request any of the instructions now asserted as grounds for reversal should be regarded as significant.

■ Of course, "[i]n a criminal case the trial court is required to instruct the jury of its own motion upon the law relating to the facts of the case and upon matters vital to a proper consideration of the evidence." (*People* v. *Yrigoyen, supra,* 45 Cal.2d 46, 49; *People* v. *Putnam,* 20 Cal.2d 885, 890-891 [129 P.2d 367].) However, "[r]eviewing courts will scrutinize with great care any claim of prejudicial error predicated solely upon the omission of the trial court to give of its own motion an instruction, the propriety of which is indicated

solely by the condition of the evidence.'' (*People* v. *Davis,* 43 Cal.2d 661, 674 [276 P.2d 801] ; see *People* v. *Richardson,* 74 Cal.App.2d 528, 533 [169 P.2d 44].)

The judgment and order are affirmed.

Fox, P. J., and Ashburn, J., concurred.

A petition for a rehearing was denied February 16, 1959, and appellant's petition for a hearing by the Supreme Court was denied March 18, 1959.