[Crim. No. 3378. Third Dist. Mar. 21, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. CLARENCE HENDERSON et al., Defendants and Appellants.

Clarence Henderson, in pro. per. and Jack Lee Burford, under appointment by the District Court of Appeal, for Defendants and Appellants.

Stanley Mosk, Attorney General, and Edward Hinz, Jr., Deputy Attorney General, for Plaintiff and Respondent.

SCHOTTKY, J.—Clarence Henderson, John Williams, and John Auls were charged by information with a violation of section 591 of the Penal Code, it being alleged that they "unlawfully and maliciously took down and removed a telephone line." After a trial by jury they were all found guilty as charged and judgments were pronounced. They have appealed from the judgments.

Appellants do not question the sufficiency of the evidence but contend the judgments should be reversed because of several asserted prejudicial errors relating to instructions. Before discussing these contentions, we shall give a brief summary of the evidence as shown by the record.

On May 14, 1962, James E. Taylor, a train dispatcher for the Sacramento Northern Railway, was on duty between 4 p.m. and midnight. At 9:36 p.m. he heard a loud noise on the west dispatcher's circuit between Sacramento and Vacaville, indicating the line had been grounded. The noise stopped at 9:38 p.m. At 9:40 p.m. Mr. Taylor telephoned Mr. Sant, general foreman, and Mr. Radcliff, special agent, of the railway and told them he suspected the line had been cut. Mr. Radcliff notified the Sheriff's Office of Yolo County. Mr. Sant and Mr. Radcliff proceeded to the Arcade Crossing of the Sacramento Northern Railway.

About 10:15 p.m. Deputy Sheriffs Martin and Leinberger of Yolo County stopped the three defendants coming out of the Yolo Bypass in a 1949 Dodge at the Arcade Crossing on the only exit road. The car was owned by the defendant Williams and he was driving. The deputies observed with the use of flashlights a set of pole climbers, a pair of wire cutters and a pair of pliers in the car. A search of the trunk disclosed three rolls of wire. Defendant Williams stated: "No, we didn't take that wire, we didn't cut that wire down." A pair of white gloves was found in the car and a black glove was found in defendant Henderson's pocket. All three defendants claimed they found the wire and pole climbers while driving out of the Yolo Bypass. Defendant Williams stated to Deputy Leinberger that he owned the white gloves, the wire cutters and the pliers.

Messrs. Sant and Radcliff drove along the Sacramento Northern Railway line and discovered where it had been cut. Mr. Sant broke off three ends from the hanging wire.

The wire cutters, pliers, three wire samples and three rolls of wire found in the car of defendant Williams were taken to the Bureau of Criminal Identification and Investigation. The pair of pliers and the wire cutters had copper smears on the cutting face, indicating that they had both cut copper wire. Mr. Harry Johnson, a criminologist with the Bureau of Criminal Identification, testified the wire cutters had cut one strand of the copper wire found in the car of defendant Williams. The pliers had also cut copper wire, but Johnson could not determine what wire. Other evidence will be referred to hereinafter.

At the trial Henderson did not testify. Defendant Williams testified he saw the wire, pole climbers, wire cutters and white gloves beside the road and all three defendants put the articles in the car. He testified defendant Auls twisted the wire with the pliers. The court gave Instruction Number 20 which in substance stated that admissions by one defendant are not admissible against a codefendant.

The appellants first contend that the court committed prejudicial error in failing to instruct the jury on the use of circumstantial evidence.

It is the duty of the court in a criminal case to give of its own motion instructions on the general principles of law pertinent to such cases where they are not proposed or presented in writing by the parties themselves. (*People* v. *Warren,* 16 Cal.2d 103 [104 P.2d 1024].) Instructions must be given relating to the facts of the case and upon matters vital to a proper consideration of the evidence. (*People* v. *Yrigoyen,* 45 Cal.2d 46 [286 P.2d 1].) "In a criminal case where circumstantial evidence is substantially relied upon for proof of guilt it is obvious that 'instructions on the general principles of law pertinent to such cases' necessarily include adequate instructions on the rules governing the application of such evidence." (*People* v. *Bender,* 27 Cal.2d 164, 175 [163 P.2d 8].) The court in the *Bender* case at page 175 approved the statement in 8 California Jurisprudence, section 405, page 371, that in every criminal case where circumstantial evidence is relied on to convict, the trial court of its own motion should give an instruction embodying the principle "that, to justify a conviction, the facts or circumstances must not only be entirely consistent with the theory of guilt but must be inconsistent with any other rational conclusion."

Upon the oral argument the Attorney General conceded that the evidence in the case at bench was largely circumstantial.

The charge against appellants was that they took down and removed a telephone line, and the record shows that the People relied entirely upon circumstantial evidence to show that any of the appellants climbed the pole and took down the telephone line. No witness testified that he saw anyone take down the wire; the People only showed that the appellants were arrested in the immediate vicinity of the crime immediately after its perpetration, and that at that time they had possession of a set of pole climbers, pliers, wire cutters, gloves and three rolls of wire. The only direct testimony linking the appellants to the crime was that of the arresting officer concerning the articles found in the possession of the appellants.

In *People* v. *Yrigoyen,* 45 Cal.2d 46 [286 P.2d 1], the court said at page 49: ''. . . In accordance with this rule we declared in *People* v. *Bender,* 27 Cal.2d 164, 174 et seq. [163 P.2d 8], that the court on its own motion should have given an instruction embodying the principle that to justify a conviction on circumstantial evidence the facts and circumstances must not only be entirely consistent with the theory of guilt but must be inconsistent with any other rational conclusion. (See also *People* v. *Koenig,* 29 Cal.2d 87, 93 [173 P.2d 1].) It is true that in the *Bender* case proof of guilt was entirely circumstantial, whereas in the present case there was direct evidence that defendant issued the check without sufficient funds in or credit with the bank, and circumstantial evidence was relied upon to show his criminal knowledge and intent. However, in the *Bender* case, it is stated that where circumstantial evidence is substantially relied upon for proof of guilt, adequate instructions on the rules governing the application of such evidence must be given. (27 Cal.2d at p. 175.) And it has been held that the instruction must be given where criminal knowledge is shown only by circumstantial evidence. (*People* v. *Candiotto,* 128 Cal.App.2d 347, 355-356 [275 P.2d 500].) ''

We believe that the court erred in failing to give to the jury the standard instruction on circumstantial evidence, but before discussing the effect of such failure we shall discuss the further contentions of appellants.

The appellants next contend that the court committed prejudicial error in giving Instruction Number 6 which reads: ''The mere fact that a person was in possession of stolen property soon after it was taken is not enough to justify his conviction of theft. It is, however, a circumstance to be considered in connection with other evidence. To warrant a finding of

guilty there must be proof of other circumstances tending of themselves to establish guilt.

"In this connection in the case of each defendant you may consider said defendant's conduct, his false or contradictory statements, if any, and any other statements he may have made with reference to the property. If a person gives a false account of how he acquired possession of stolen property this is a circumstance that tends to show guilt. If he has a reasonable opportunity to show that his possession was honestly acquired but refuses or fails to do so, this is a circumstance that tends to show his guilt."

Sections 1093 and 1127 of the Penal Code "require that the trial court's charge to the jury must be applicable and confined to the 'points pertinent to the issue,' and to such matters of law as may be necessary for the information of the jury. This being so, the charge of the trial court may not, without error, even though correctly stating abstract legal principles, be extended beyond such limitation to the point of covering an assumed issue which finds no support in the evidence, or which the undisputed evidence in the case shows does not exist." (*People* v. *Roe*, 189 Cal. 548, 558 [209 P. 560].)

We believe that Instruction Number 6 should not have been given as the appellants were not charged with theft, and, as argued, the instruction may have tended to confuse the jury. However, the court in Instruction Number 2 told the jury that appellants were charged with taking down and removing a telephone line and the forms of verdict handed to the jury by the court stated that they should find the appellants guilty or not guilty of removing a telephone line in violation of section 591 of the Penal Code.

We do not believe that under the circumstances of this case as shown by the record the use of the word "theft" confused the jury. First, appellants were convicted of taking down and removing a telephone line as charged in the information and read to the jury. Second, the court instructed the jury fully as to the elements of this crime. Third, the deputy district attorney stated to the jury panel prior to *voir dire* that appellants were accused of taking down and removing a telephone line. Fourth, during *voir dire* of the prospective jurors, the deputy district attorney many times emphasized that appellants were charged with a crime seldom heard of and thus emphasized that the crime had special elements.

Furthermore, in his opening statement, the deputy district attorney emphasized that appellants were charged with the

taking down and removing of a telephone line. In the closing argument the deputy district attorney again emphasized that appellants were charged with this crime.

Furthermore, appellant Williams made this point clear while on the witness stand. He stated to the jury that in order to convict him they must believe he really climbed the poles.

While we are of the opinion that Instruction Number 6 should not have been given, we do not believe that we would be justified in holding that the court committed reversible error in giving it.

Appellants' final contention is that the court committed prejudicial error in failing to instruct the jury on "The effect and value of the evidence of the defendants' possession of the stolen property as it related to the offense with which they were charged." This contention cannot be sustained. " 'It is the duty of a court in criminal cases to give, of its own motion, instructions on the general principles of law pertinent to such cases, where they are not proposed or presented in writing by the parties themselves. But it is not its duty to give instructions upon specific points developed through the evidence introduced at the trial, unless such instructions are requested by the party desiring them. ▮▮ When the court fully and fairly charges the jury upon the law appertaining to the facts of the case, its failure to instruct on any particular matter deemed essential is not error in the absence of a request for such an instruction.' " (*People* v. *Warren,* 16 Cal.2d 103, 116-117 [104 P.2d 1024].)

The instruction which appellants contend should have been given does not concern a general principle of law. If the appellants desired such an instruction it was their duty to request it.

The most serious question that must be decided by this court is whether or not the failure of the trial court to give an instruction on circumstantial evidence requires a reversal of the judgment. Section 4½ of article VI of the Constitution provides, "No judgment shall be set aside, . . . on the ground of misdirection of the jury, . . . , unless, *after an examination of the entire cause, including the evidence,* the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (Italics added.) ▮ No precise formula can be drawn for deciding whether an error in instructions has resulted in a miscarriage of justice. For this purpose the appellate court must review the entire record, includ-

ing the evidence, and in each instance the determination whether the error requires a reversal depends upon all the circumstances of the particular case. (*Alarid* v. *Vanier*, 50 Cal.2d 617, 625 [327 P.2d 897] ; *Butigan* v. *Yellow Cab Co.*, 49 Cal. 2d 652, 660-661 [320 P.2d 500].)

 And as stated by our Supreme Court in *People* v. *Watson*, 46 Cal.2d 818 [299 P.2d 243], at page 836:

''Giving due consideration to the varying language heretofore employed in relating the constitutional amendment to the particular situations involved, it appears that the test generally applicable may be stated as follows: That a 'miscarriage of justice' should be declared only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error. . . .''

Applying the test as above stated to the record in the case at bench, we are of the opinion that a result more favorable to the appellants would not have been reached if the court had given the standard instruction on circumstantial evidence.

 According to James E. Taylor, the train dispatcher, the telephone line was cut at 9 :38 p.m. The sheriff's office was notified, and about 10 :15 p.m. Deputy Sheriffs Martin and Leinberger stopped the three defendants coming out of the Yolo Bypass on the only exit road at the Arcade Crossing. As hereinbefore related, the three rolls of telephone wire which had been cut from the telephone line a scant half hour before were in the trunk of the automobile in which they were riding, and the pole climbers, a pair of pliers, commonly known as wire cutters, and a pair of utility pliers were on the floor of the car. The following appears in the testimony of Deputy Sheriff Leinberger : ''Q. At the time at the scene when these defendants got out of the car, did all three of them do some talking ? A. Mr. Williams did most of the talking for all of them. Q. His explanation to you as to how he got the wire— did he give you an explanation ? A. Yes, sir. Q. What was that ? A. They were coming out of the Bypass and observed something in the road, and he turned to the right to keep from hitting it, and backed up and upon backing up, observed three rolls of wire and the pole climbers laying on the side of the road. Q. What else did he say ? A. North side of the road. Q. What else did Mr. Williams say ? What did he say they did after that ? A. He said they picked it up and put it in his car, and Mr. Auls said he tried to talk him out of it. He said

'Maybe its for improvement in the area, leave it there,' and Mr. Williams took it anyway. I guess Mr. Auls told him not to. . . . Q. Did Mr. Henderson say anything that evening with respect to the story told by Mr. Williams? A. Just the same story as Mr. Williams; they found it alongside the road."

Harry Johnson, a criminologist in the State Bureau of Criminal Identification and Investigation, testified that at least one roll of the wire had been cut with the wire cutting pliers.

Taking into consideration the foregoing evidence, we believe that the guilt of appellants was so clearly established that it is not reasonably probable that a result more favorable to appellants would have been reached if the instruction on circumstantial evidence had been given. It is inconceivable that the jury could have believed that in the short space of less than 40 minutes persons other than the three appellants could have taken down the telephone wire and left it on the narrow road in the Yolo Bypass where appellants claimed they found it.

We have made a careful study of the evidence, and taking the record as a whole and bearing in mind the plain and meaningful words of our state Constitution hereinbefore quoted, we are convinced that no miscarriage of justice has resulted.

The judgments are affirmed.

Pierce, P. J., and Friedman, J., concurred.

The petition of appellant Henderson for a hearing by the Supreme Court was denied May 14, 1963.