[No. B002846. Second Dist., Div. Two. Oct. 9, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHNNY DOMINGUEZ OLEA, Defendant and Appellant.

**COUNSEL**

Dennis L. Cava, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Robert R. Anderson and Michael Nash, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ROTH, P. J.**—Appellant was convicted by a jury of second degree murder and was sentenced to state prison for a term of 15 years to life. Evidence adduced at his trial, which insofar as the issue of his responsibility for the crime was concerned was circumstantial in nature, more than adequately established the basis for his prosecution, namely, that he had on January 29, 1983, while in a state of intoxication induced by alcohol, unlawfully killed Steven Martinez by stabbing, following a late night altercation between the two.[1]

---

[1]On the night in question Steven arrived home with his brother Joseph at approximately 11:30 p.m. Their residence was adjacent to the home of Diane Wimpee, appellant's girlfriend. After first entering his house, Steven went outside where he found appellant and Ms. Wimpee in the latter's front yard, which was separated from that of Steven by a fence or wall in which there was a gate. Following an exchange of abusive remarks between appellant and Steven, the two met at the gate and engaged in a fistfight of some 20 or 30 seconds duration, from which appellant suffered a substantial beating owing at least in part to an apparent inability to defend himself because of his inebriated condition.

When this initial encounter ended, appellant and Steven again exchanged words and another, similarly brief, fight ensued. The combatants then retired inside the respective houses. After cleaning up in Ms. Wimpee's bathroom, appellant returned outside, where he called to Steven to join him. Shortly following his accession to the request, Steven was found lying in the street in front of the home with two knife wounds in his chest.

At the conclusion of the first encounter with Steven, appellant stated he was not drunk.

 The initial claim of error assigned as requiring reversal of the judgment herein involves the refusal of the trial court to provide the triers of fact with two instructions proferred by the defense, to wit: "If, from all of the evidence, you have a reasonable doubt that the defendant, at the time of the alleged crime, because of voluntary intoxication, or any other cause, actually engaged in the process of deliberation, premeditation, and preexisting reflection, then you may not find him guilty of wilful deliberate and premeditated murder of the first degree.

"If, from all the evidence, you have a reasonable doubt that the defendant, at the time of the alleged crime, because of voluntary intoxication or any other cause, actually engaged in the process of careful thought and weighing of considerations for and against the proposed course of action, then you may not find him guilty of murder of either the first or second degree.

"If, from all the evidence, you have a reasonable doubt that the defendant, at the time of the alleged crime, because of voluntary intoxication, or any other cause, actually engaged in the process of careful thought and weighing of considerations for and against the proposed course of action, then you may not find that he harbored express malice. (See former CALJIC No. 8.77.)

"When a defendant is charged with a crime which requires a certain mental state be established in order to constitute the crime or degree of crime, you must take all the evidence into consideration and determine therefrom if, at the time when the crime allegedly was committed, the defendant was suffering from some abnormal mental condition, however caused, which prevented him from forming the specific mental state essential to constitute the crime or degree of crime for which he is charged.

"If from all the evidence you have a reasonable doubt whether defendant formed such mental state, you must give defendant the benefit of that doubt and find that he did not have such mental state." (See former CALJIC No. 3.35.)

The rationale for the trial court's conclusion that these instructions were inappropriate was expressed as follows: "With defendant's proposed in-

---

While he was visibly upset after the second encounter, he calmed down to the point of speaking in a normal voice while in Ms. Wimpee's bathroom. Prior to his returning outside, and while he and Ms. Wimpee were in Ms. Wimpee's kitchen, both Ms. Wimpee's parents heard a rummaging through a kitchen drawer. After Steven had been stabbed, appellant met with his brothers, hysterically relating to them he had been in a fight with Steven and thought he had hurt him.

structions, plural, 8.77, two different versions, both relating to voluntary intoxication, essentially one relating to reduction of the crime from murder to manslaughter, and the other a briefer version indicating essentially the voluntary intoxication might preclude a finding of harboring of express malice.

"My position is Penal Code section 25, passed by the voters as a portion of Proposition 8, is totally dispositive of that issue. And I have no discretion to give that instruction. I have, however, indicated the defense will be allowed some argument on the drunkenness issue—will be allowed some latitude there because I can't conceive that he's not entitled to discuss the deliberation which went on in his client's mind, as the evidence would seem to bear on that."

That the trial court's conclusion was correct is evident, we think, from the following considerations.

Penal Code section 25, subdivision (a) added by initiative approved by the electorate on June 8, 1982, provides that: "(a) The defense of diminished capacity is hereby abolished. In a criminal action, as well as any juvenile court proceeding, evidence concerning an accused person's intoxication, trauma, mental illness, disease or defect shall not be admissible to show or negate capacity to form the particular purpose, intent, motive, malice aforethought, knowledge, or other mental state required for the commission of the crime charged."

The abolition of the defense of diminished capacity so expressed essentially reiterated legislative changes effected in 1981 and 1982 which amended or added, inter alia, Penal Code sections 21, 22, 28 and 29 in such fashion that they currently provide in pertinent part, respectively, that: "(b) In the guilt phase of a criminal action or a juvenile adjudication hearing, evidence that the accused lacked the capacity or ability to control his conduct for any reason shall not be admissible on the issue of whether the accused actually had any mental state with respect to the commission of any crime. This subdivision is not applicable to Section 26." (Pen. Code, § 21, subd. (b).)

"(a) No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition. Evidence of voluntary intoxication shall not be admitted to negate the capacity to form any mental states for the crimes charged, including, but not limited to purpose, intent, knowledge, premeditation, deliberation or malice aforethought, with which the accused committed the act.

"(b) Evidence of voluntary intoxication is admissible solely on the issue of whether or not the defendant actually formed a required specific intent, premediated, deliberated or harbored malice aforethought, when a specific intent crime is charged." (Pen. Code, § 22, subds. (a), (b).)

"(a) Evidence of mental disease, mental defect, or mental disorder shall not be admitted to negate the capacity to form any mental state, including, but not limited to, purpose, intent, knowledge, premeditation, deliberation, or malice aforethought, with which the accused committed the act. Evidence of mental disease, mental defect, or mental disorder is admissible solely on the issue whether or not the accused actually formed a required specific intent, premeditated, deliberated, or harbored malice aforethought, when a specific intent crime is charged.

"(b) As a matter of public policy there shall be no defense of diminished capacity, diminished responsibility, or irresistible impulse in a criminal action or juvenile adjudication hearing.

"⟨. . . . . . . . . . . . . . . . . . . . . . .

"(d) Nothing in this section shall limit a court's discretion, pursuant to the Evidence Code, to admit or exclude psychiatric or psychological evidence on whether the accused had a mental disease, mental defect, or mental disorder at the time of the alleged offense." (Pen. Code, § 28, subds. (a), (b), (d).)

"In the guilt phase of a criminal action, any expert testifying about a defendant's mental illness, mental disorder, or mental defect shall not testify as to whether the defendant had or did not have the required mental states, which include, but are not limited to, purpose, intent, knowledge, or malice aforethought, for the crimes charged. The question as to whether the defendant had or did not have the required mental states shall be decided by the trier of fact." (Pen. Code, § 29.)

■ What will be seen from these revisions, it seems clear, is that while it is no longer possible for a defendant to assert or prove he was *unable* to form various mental states or to control his conduct on account of intoxication, that is to say, that he lacked the *capacity* to do so, it is yet the case the fact of his intoxication may be presented in evidence and considered by the trier of fact on the issue whether he actually formed one or more of the mental states referred to, such that a necessary element of a given crime might not be shown to exist. Stated another way, what emerges from the revisions is that the fact of intoxication in a criminal proceeding now pertains not to what a defendant could have done concerning the formation of

a requisite mental state, but only to what he actually did with respect thereto.

 That being so, the question remains whether instructions of the kind submitted by appellant and rejected by the trial court were required to be given. We are persuaded the answer to that question should be no, based upon the following rationale.

During the time the defense of diminished capacity constituted a viable theory upon which a defendant could avoid conviction of a particular crime, instructions pertaining thereto (e.g., CALJIC No. 8.77 and CALJIC No. 3.35[2]) were of the import that should the trier of fact be convinced lack of capacity had been demonstrated, the necessary conclusion which followed was that the mental state in issue could not be proved. That is to say, if a defendant could not have formed a given mental state, then certainly he did not form it. At the same time it was always possible the trier of fact would not be convinced lack of capacity had been shown, in which event it was still necessary to determine whether the requisite mental state actually *was formed,* yet no instruction other than those typically given in definition of a crime and its elements was ever provided in aid of that necessity. ██ ██ ██ ██ ██ The same, we think, should be true in cases like that present here, where capacity was not involved, but where the jury was fully instructed respecting what was required to be proved in order to convict appellant of murder or manslaughter.[3] Accordingly, we reject appellant's first contention.

 He alternatively maintains there was reversible error in the trial court's refusal to instruct the jury in terms of CALJIC No. 2.02, overlooking, it would appear, that CALJIC No. 2.01 was given.[4] The latter being

---

[2]Following the legislative changes referred to, approval of these instructions by the Committee on Standard Jury instructions, Criminal, of the Superior Court of Los Angeles County was withdrawn.

[3]Though not discussed by the parties, the same rationale in our view negates any necessity for the use of CALJIC No. 4.21 (1981 revision).

[4]The instructions provide respectively that: "However, a finding of guilt as to any crime may not be based on circumstantial evidence unless the proved circumstances are not only (1) consistent with the theory that the defendant is guilty of the crime, but (2) cannot be reconciled with any other rational conclusion.

"Further, each fact which is essential to complete a set of circumstances necessary to establish the defendant's guilt must be proved beyond a reasonable doubt. In other words, before an inference essential to establish guilt may be found to have been proved beyond a reasonable doubt, each fact or circumstance upon which such inference necessarily rests must be proved beyond a reasonable doubt.

"Also, if the circumstantial evidence is susceptible of two reasonable interpretations, one of which points to the defendant's guilt and the other to his innocence, it is your duty to adopt that interpretation which points to the defendant's innocence, and reject that interpretation which points to his guilt.

"If, on the other hand one interpretation of such evidence appears to you to be reasonable

appropriate in instances where, as here, direct evidence of a defendant's commission of the charged crime rather than simply his state of mind in connection therewith is lacking, we likewise reject appellant's second contention. (See *People* v. *Yrigoyen* (1955) 45 Cal.2d 46 [286 P.2d 1].)

The judgment appealed from is affirmed.

Beach, J., and Gates, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 3, 1985. Kaus, J., and Grodin, J., were of the opinion that the petition should be granted.

---

and the other interpretation to be unreasonable, it would be your duty to accept the reasonable interpretation and reject the unreasonable." CALJIC No. 2.01 (1979 revision).

"The mental state with which an act is done may be shown by the circumstances surrounding the commission of the act. But you may not find the defendant guilty of the offenses of first or second degree murder unless the proved circumstances not only are consistent with the theory that he had the required mental states but cannot be reconciled with any other rational conclusion.

"Also, if the evidence as to such mental states is susceptible of two reasonable interpretations, one of which points to the existence of the mental states and the other to the absence of the mental states, it is your duty to adopt that interpretation which points to the absence of the mental states. If, on the other hand, one interpretation of the evidence as to such mental states appears to you to be reasonable and the other interpretation to be unreasonable, it would be your duty to accept the reasonable interpretation and to reject the unreasonable. (CALJIC No. 2.02 (1980 revision.)