Filed 10/21/15  P. v. Alvarado CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E061217 |
| v. | (Super.Ct.No. FSB1205411) |
| FELIPE EPIFANO ALVARADO, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  William Jefferson Powell, IV, Judge.  Affirmed.

Patricia L. Brisbois, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton, Sabrina Y. Lane-Erwin, and Christopher P. Beesley, Deputy Attorneys General, for Plaintiff and Respondent.

1

I

INTRODUCTION

Defendant Felipe Epifano Alvarado, a West Side Verdugo gang member, attacked a handyman in a convenience store, flashed his gang tattoos, and then robbed the cashier at knifepoint. A jury convicted defendant of second degree robbery and assault by means likely to produce great bodily injury (Pen. Code, §§ 211, 245, subd. (a)(4))[1], as charged in counts 1 and 2, and found true the allegations that both offenses were gang-related and the robbery involved personal use of a deadly or dangerous weapon. (§§ 186.22, subd. (b)(1), 12022, subd. (b)(1).) The court sentenced defendant to a total prison term of 29 years.[2]

On appeal, defendant does not challenge the substantive convictions but instead attacks the gang enhancements, arguing the trial court erred by allowing evidence of defendant's 2002 conviction for assault with a firearm as a gang predicate; there was

---

[1] All statutory references are to the Penal Code unless stated otherwise.

[2] In a bifurcated proceeding, the court found true beyond a reasonable doubt the prior serious felony conviction allegation. (§§ 667, subds. (a)-(i), 1170.12, subd. (a)). The court denied a motion to strike the prior conviction allegation and sentenced defendant to the upper term of five years, doubled to 10 years based on the strike prior, for the robbery conviction in count 1. The court enhanced that sentence by a consecutive term of 10 years for the gang finding plus one year for the weapon use finding, for a total term of 21 years for count 1. The court then imposed a consecutive term of one year, doubled to two, for the assault conviction in count 2, plus one additional year for the gang finding, for a term of three years overall for that count. The court then added a five-year term for the prior serious felony, for an aggregate term of 29 years.

ineffective assistance of counsel concerning the gang expert's testimony about defendant's state of mind; and there was insufficient evidence of specific intent, as well as instructional error. We reject defendant's claims of error and affirm the judgment.

II

FACTUAL AND PROCEDURAL BACKGROUND

A. *December 2012*

One evening in December 2012, a handyman, Charles Stille, was repairing a ceiling in a convenience store when he felt three or four hard blows to the top of his head. When he realized someone was hitting him, he turned and punched defendant, the assailant. The store's security guard intervened and removed defendant from the store. Stille waited in the restroom for a few minutes. When Stille emerged, he saw defendant sneak past the guard back into the store. Defendant removed his shirt and wrapped it around his hand, as if intending to attack Stille again. Defendant has a large tattoo across his chest that reads, "West Side Verdugo" and another large tattoo across his back that reads, "Mount Vernon." Stille recognized defendant's gang tattoos. Because Stille felt threatened, he grabbed his ladder, left the store, and went home.

The store cashier, M.D. Hossain, saw defendant tear off his shirt and begin screaming. Defendant looked "abnormal" to Hossain. Defendant pushed Hossain against the wall, pressing a box cutter against his stomach. Defendant also used a hammer to hit Hossain's thighs. Defendant threatened to kill Hossain if he did not cooperate. After

3

taking money from the register, defendant demanded Hossain's wallet. While the two men were still crammed together behind the store counter, the police arrived.

Police recovered the money taken from the register and Hossain's wallet—fifty $1 bills, seven $5 bills, and $108. They also found a box cutter with a retractable blade and a claw hammer in defendant's back pocket.

*B. Gang Affiliation Evidence*

West Side Verdugo is the largest criminal street gang in the city of San Bernardino. The gang's territory covers the western side of San Bernardino although the gang is expanding eastward. The convenience store is near the gang's eastern boundary. The gang's crimes include robbery, assault, drug sales, carjacking, and vehicle theft.

Defendant admitted he is a member of West Side Verdugo and its clique, Mount Vernon. He was initiated into the gang in 1999 or 2000 when he was 14 years old and his gang moniker is "Sleezy." His gang tattoos include West Side Verdugo on his chest and Mount Vernon on his back. After his arrest in 2012, defendant admitted his gang status but claimed he had "been trying to do the right and did not mean to do the 211 [robbery]." Defendant had a "G," a gang sign, tattooed on his hand while in prison and he did not request to be placed in protective custody.

The gang expert testified that defendant was arrested in 2002 with Luis Reyes, an admitted member of West Side Verdugo, and later convicted of assault with a firearm. In 2010, defendant was detained during a traffic stop and admitted being a member of Mount Vernon and that his moniker was Sleezy. The detaining officer noted the large

4

tattoos across defendant's chest and back. In addition, the expert testified about six additional predicate offenses which were committed by gang members between 2009 and 2012. The prosecutor's gang expert opined that defendant was an active gang member at the time of the charged offenses and that both offenses were committed to benefit the gang.

III

2002 CONVICTION FOR ASSAULT WITH A FIREARM

Before trial the prosecutor made a motion to introduce evidence of defendant's 2002 conviction for assault with a firearm as one of seven predicate offenses to prove defendant committed his crimes "for the benefit of, at the direction of, or in association with a criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members." (§ 186.22, subd. (b)(1).) When defense counsel objected, the prosecutor clarified that the evidence was not being offered to show intent under Evidence Code section 1101 but only as evidence of a predicate offense to support the gang enhancement under section 186.22. The trial court allowed the evidence based on *People v. Tran* (2011) 51 Cal.4th 1040, 1046-1050. The trial court also expressly found that seven predicate offenses was a reasonable number, and not too many offenses, to demonstrate the volume of gang activity.

The prosecution's gang expert testified that defendant was convicted in 2002 of felony assault with a firearm, in violation of section 245, subdivision (a)(2), and an enhancement allegation for personally inflicting great bodily injury under section

12022.7, subdivision (a). The expert also reviewed the police reports and testified that the 2002 offense was gang-related although defendant had not been charged with a gang enhancement. In particular, the expert described how defendant had approached the victim while in gang territory, and asked "where he was from, which . . . means basically what gang are you from." The expert also testified about the six other predicate offenses committed between 2009 and 2012. The prosecutor argued to the jury that the 2002 shooting was gang-related.

Defendant asserts the prejudice of the subject evidence outweighed any probative value. (Evid. Code, § 352.) Furthermore, he argues the six other predicate offenses made defendant's 2002 conviction prejudicially cumulative. Thus, the admission of the 2002 conviction as a predicate offense violated defendant's due process right to a fair trial under the Fourteenth Amendment. We disagree.

In *Tran*, the Supreme Court held "a defendant's offense on a separate occasion might qualify as a predicate offense to establish a 'pattern of criminal gang activity' under the STEP Act." (*People v. Tran, supra,* 51 Cal.4th at p. 1046.) *Tran* also addressed the issue of prejudice in detail: "Without doubt, evidence a defendant committed an offense on a separate occasion is inherently prejudicial. [Citations.] But Evidence Code section 352 requires the exclusion of evidence only when its probative value is *substantially* outweighed by its prejudicial effect. 'Evidence is substantially more prejudicial than probative . . . [only] if, broadly stated, it poses an intolerable "risk

6

to the fairness of the proceedings or the reliability of the outcome" [citation].' (*People v. Waidla* (2000) 22 Cal.4th 690, 724.)  [¶] . . . [¶]

". . . In prosecutions for active participation in a criminal street gang, the probative value of evidence of a defendant's gang-related separate offense generally is greater because it provides direct proof of several *ultimate facts* necessary to a conviction.  Thus, that the defendant committed a gang-related offense on a separate occasion provides direct evidence of a predicate offense, that the defendant actively participated in the criminal street gang, and that the defendant knew the gang engaged in a pattern of criminal gang activity.

"At the same time, the inherent prejudice from a defendant's separate gang-related offense typically will be less when the evidence is admitted to establish a predicate offense in a prosecution for active participation in a criminal street gang, than when it is admitted to establish an intermediary fact from which guilt may be inferred.  'Prejudice for purposes of Evidence Code section 352 means evidence that tends to evoke an emotional bias against the defendant with very little effect on issues, not evidence that is probative of a defendant's guilt.' (*People v. Crew* (2003) 31 Cal.4th 822, 842.)  . . .  In addition, because the prosecution is required to establish the defendant was an active participant in a criminal street gang and had knowledge of the gang's criminal activities, the jury inevitably and necessarily will in any event receive evidence tending to show the defendant actively supported the street gang's criminal activities.  That the defendant was personally involved in some of those activities typically will not so increase the

7

prejudicial nature of the evidence as to unfairly bias the jury against the defendant. In short, the use of evidence of a defendant's separate offense to prove a predicate offense should not generally create 'an intolerable "risk to the fairness of the proceedings or the reliability of the outcome."' (*People v. Waidla, supra*, 22 Cal.4th at p. 724.)" (*People v. Tran, supra,* 51 Cal.4th at pp. 1047-1048.)

The prosecutor here had to prove that defendant's crimes were gang related and motivated: ". . . the prosecution must demonstrate that . . . defendant sought to benefit that particular gang when committing the underlying felony." (*People v. Prunty* (2015) 62 Cal.4th 59, 67; *People v. Tran, supra,* 51 Cal.4th at p. 1044; *People v. Sengpadychith* (2001) 26 Cal.4th 316, 322-323.) Defendant's 2002 offense supplied that proof. The record shows the trial court expressly considered the prejudicial effect of the evidence of the 2002 offense both separately and in combination with the six other predicate offenses. At trial, the evidence of the 2002 offense involved only three pages of testimony and a brief comment by the prosecutor during closing argument. The jury was expressly instructed based on CALCRIM No. 1403 to consider the gang evidence to show the intent required to prove the gang enhancement but not as propensity evidence to show bad character or disposition to commit a crime. It was not an abuse of discretion to allow that evidence because the probative value outweighed any prejudice. (*People v. Kelly* (2007) 42 Cal.4th 763, 783, 785.)

IV

INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next contends defense counsel rendered deficient representation in violation of defendant's Sixth Amendment right to counsel by failing to object to the prosecutor's questions to the gang expert. The Sixth Amendment guarantees a criminal defendant the right to effective legal representation. (*Strickland v. Washington* (1984) 466 U.S. 668, 694; *People v. Ledesma* (1987) 43 Cal.3d 171, 215-218; *People v. Pope* (1979) 23 Cal.3d 412, 422.) Defendant bears the burden of proving ineffective assistance of counsel (IAC). (*Pope,* at p. 425.) To this end, he must show (1) defense counsel's performance was below an objective standard of reasonableness under prevailing professional norms, and (2) the deficient performance prejudiced him. (*Strickland,* at pp. 687, 691-692; *People v. Frye* (1998) 18 Cal.4th 894, 979.) Prejudice is demonstrated "when there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. [Citations.]" (*People v. Majors* (1998) 18 Cal.4th 385, 403.)

During direct examination of the gang expert, the prosecutor elicited the expert's opinion about whether the charged offenses benefited the West Side Verdugo gang. The expert testified that, after Stille recognized defendant's gang tattoos, he was terrified for himself and on behalf of his grandchildren because he feared gang retaliation. The expert also testified that the robbery benefited the West Side Verdugo gang because it was a tool

9

used by the gang to earn money and to increase its reputation for dangerousness. Defendant flashing his tattoos benefited the gang by intimidating the victims and witnesses. The location of the crime—where the gang was trying to expand outside its traditional territory—was another gang benefit. The expert believed it would have been a different kind of crime, not a benefit to the gang, if defendant had committed the robbery elsewhere and not flashed his gang tattoos so aggressively.

We reject defendant's mischaracterization of the expert's testimony as being about "what [defendant] specifically intended when he committed the assault and robbery" and defendant's assertion that said testimony invaded the province of the jury because an expert witness may not offer an opinion that a defendant had specific knowledge or intent. (*People v. Killebrew* (2002) 103 Cal.App.4th 644, 658; *People v. Torres* (1995) 33 Cal.App.4th 37, 47.) Based on our reading of the record, there was no professional responsibility for defense counsel to object to the prosecutor's inquiry about why the expert believed defendant's conduct benefited the gang. Certainly, defendant did not succeed in showing that defense counsel's performance was below an objective standard of reasonableness under prevailing professional norms or that a deficient performance prejudiced defendant. There was no IAC and no prejudice.

V

INSUFFICIENT EVIDENCE OF GANG ENHANCMENT

Defendant additionally contends the evidence was insufficient to show the specific intent to promote, further, or assist criminal conduct by gang members as required under

10

section 186.22, subdivision (b)(1), for a gang enhancement.  Upon review of a claim of insufficient evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  [Citation.]"  (*Jackson v. Virginia* (1979) 443 U.S. 307, 319.)  The issue must be resolved in light of the record as a whole and the reviewing court must "judge whether the evidence of each of the essential elements . . . is *substantial.*'"  (*People v. Johnson* (1980) 26 Cal.3d 557, 577.)  It must be determined whether the record "discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value . . . ."  (*Id.* at p. 578.)  "A trier of fact may rely on inferences to support a conviction only if those inferences are 'of such substantiality that a reasonable trier of fact could determine beyond a reasonable doubt' that the inferred facts are true.  [Citation.]"  (*People v. Rios* (2013) 222 Cal.App.4th 542, 564.)

As already discussed, we conclude the evidence supported the gang enhancement. Defendant has been a gang member since he was 14 years old.  In 2002, defendant committed a gang-related crime with another gang member.  In 2010, he admitted to the police that he was still a gang member.  In 2012, West Side Verdugo was expanding its territory eastward.  Defendant burst into a convenience store located on the border of gang territory, tore off his shirt and flashed his tattoos, the symbols of his gang allegiance, to the two occupants of the store.  He terrorized both men, assaulted one, and threatened and robbed the other.  In the opinion of the gang expert, all these facts

11

demonstrated that defendant acted to benefit his gang.  Substantial evidence supports the gang enhancement.  (*People v. Albillar* (2010) 51 Cal.4th 47, 60-63.)

VI

INSTRUCTIONAL ERROR

Defendant's penultimate argument, before asserting cumulative error, is the trial court erred in its instructions on circumstantial evidence by using CALCRIM No. 224 [circumstantial evidence:  sufficiency of evidence] and not CALCRIM No. 225 [circumstantial evidence:  intent or mental state], and violated defendant's due process right to a fair trial under the Fourteenth Amendment.  Defendant maintains that the prosecutor relied primarily on circumstantial evidence to prove defendant's specific intent to benefit the West Side Verdugo gang.  Defendant asserts there was an alternative explanation for why defendant removed his shirt, which was to bandage his hand after he hit Stille, not to display his gang tattoos.  Therefore, defendant contends because there was a reasonable alternative, the court should have given CALCRIM No. 225 sua sponte.

As a preliminary matter, we agree defendant forfeited this issue by not requesting the instruction below.  (*People v. Hart* (1999) 20 Cal.4th 546, 622.)  Additionally, we perceive that defendant announcing his gang allegiance by the nonverbal conduct of flashing his gang tattoos is actually direct, not circumstantial, evidence of defendant's intent to benefit the gang.  Furthermore, because the prosecutor relied on circumstantial evidence to prove other elements of the gang enhancement and not only defendant's

12

specific intent, CALCRIM No. 225 would have been too narrow and should not have been used by the trial court.

A trial court is required to instruct the jury on the general relevant principles of law. (*People v. Abilez* (2007) 41 Cal.4th 472, 517.) In reviewing a claim of instructional error, the court must look at the instructions given as a whole to determine whether the error was prejudicial. (*People v. Cain* (1995) 10 Cal.4th 1, 36.)

When the prosecution's case rests "substantially" on circumstantial evidence, the court must instruct on this principle sua sponte. (*People v. Wiley* (1976) 18 Cal.3d 162, 174.) Two standard instructions may be used in a circumstantial evidence case. CALCRIM No. 224 is the more general instruction applicable to all types of circumstantial evidence and should be used "when the prosecution substantially relies on circumstantial evidence to establish any element of the case." (*People v. Samaniego* (2009) 172 Cal.App.4th 1148, 1171, citing *People v. Yrigoyen* (1955) 45 Cal.2d 46, 49.) In contrast, CALCRIM No. 225 is a specific instruction that is for use instead of CALCRIM No. 224 in a specific intent or mental state case in which the only element of the offense which rests substantially or entirely on circumstantial evidence is the element of specific intent or the mental state. (*Samaniego*, at pp. 1171-1172; *People v. Bloyd* (1987) 43 Cal.3d 333, 351-352.)

CALCRIM No. 225 was not appropriate in this case because the prosecutor used circumstantial evidence to prove much more than defendant's specific intent. Circumstantial evidence proved that West Side Verdugo was a criminal street gang,

13

defendant was a member, and the gang benefited from defendant's crimes. If defendant's act of flashing gang tattoos while committing his crimes was circumstantial, and not direct evidence, it was not the only or primary circumstantial evidence relied upon by the prosecution. Furthermore, the trial court adequately instructed the jury on circumstantial evidence using CALCRIM Nos. 223 and 224. Therefore, there was no possibility of prejudice caused by the omission of CALCRIM No. 225.

VII

DISPOSITION

In the absence of error, there is no cumulative error. (*People v. Cunningham* (2001) 25 Cal.4th 926, 1009.)

We affirm the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ_____<br>J.

We concur:

CODRINGTON_____<br>P. J.

MILLER_____<br>J.

14