[No. F036604. Fifth Dist. May 4, 2001.]

In re JASON DAN TAYLOR on Habeas Corpus.

## COUNSEL

Joseph L. Ungvari, under appointment by the Court of Appeal, for Petitioner Jason Dan Taylor.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Thomas Y. Shigemoto and Judy Kaida, Deputy Attorneys General, for Respondent the People.

## OPINION

**VARTABEDIAN, J.**—Jason Dan Taylor petitions for writ of habeas corpus, claiming the trial court failed to take a valid waiver of his right to a jury trial before the court determined he had sustained prior serious felony convictions within the meaning of the three strikes law. (Pen. Code, § 667, subds. (b)-(i).)[1]

Taylor asserts the United States Supreme Court decision in *Apprendi v. New Jersey* (2000) 530 U.S. 466 [120 S.Ct. 2348, 147 L.Ed.2d 435] (*Apprendi*) entitles him to relief because his right to a jury adjudication of the alleged prior convictions is now a right of constitutional dimension. Bearing on this question is the recent California Supreme Court case of *People v. Epps* (2001) 25 Cal.4th 19 [104 Cal.Rptr.2d 572, 18 P.3d 2]. We hold that the right to a jury trial to determine the fact of a prior conviction derives solely from California statutory law.

### FACTUAL AND PROCEDURAL BACKGROUND

In 1997, Taylor was prosecuted on an information that alleged, in addition to the substantive crimes, two prior burglary convictions, qualifying as serious felonies under the three strikes law. (§ 667, subd. (d).)

After the jurors began their deliberations, but before they reached their verdict, Taylor waived his right to a jury trial on the priors. Thereafter, the jury convicted Taylor of two felony offenses. The court then held a court trial and found true both three strikes allegations.

Taylor's prior serious felony convictions were for burglaries which occurred in 1991; defendant pled guilty on January 29, 1992, to both burglaries. The judgment of that date described the convictions as "first degree" burglaries "as charged in the Complaint/Information." In 1991,

---

[1] All future code references are to the Penal Code unless otherwise noted.

section 460 defined first degree burglary as follows: "Every burglary of an inhabited dwelling house, vessel, as defined in the Harbors and Navigation Code, which is inhabited and designed for habitation, or trailer coach as defined by the Vehicle Code, or the inhabited portion of any other building, is burglary of the first degree." (Stats. 1989, ch. 357, § 3, pp. 1475-1476.) The complaint contained in the record of that proceeding described each burglary as that of an "inhabited dwelling," giving the house address in each instance. At the time of defendant's current trial in 1997, section 1192.7, subdivision (c)(18) defined what constitutes a serious felony (as that term is used in the three strikes law): "As used in this section 'serious felony' means any of the following: [¶] . . . burglary of an inhabited dwelling house, or trailer coach as defined by the Vehicle Code, or inhabited portion of any other building." (Stats. 1993, ch. 617, § 18.5, pp. 3546-3547.)

Based on the finding of the truth of both three strikes allegations, Taylor was sentenced to prison for a term of 25 years to life on each of the felony counts.

Taylor appealed. We affirmed his conviction, rejecting contentions related to his motion to suppress, the three strikes law, and cruel and unusual punishment. (*People v. Taylor* (Sept. 17, 1998, F028353) [nonpub. opn.].)[2] In his appeal, Taylor did not challenge the validity of his jury trial waiver concerning the section 667, subdivision (d) strike allegations. Taylor filed a petition for review in the California Supreme Court challenging the reasonable doubt instruction, CALJIC No. 2.90. Taylor's petition for review was denied.

On September 27, 2000, Taylor filed the instant petition. We issued an order to show cause to determine the impact of *Apprendi* on Taylor's jury trial waiver on the three strikes allegations.

### DISCUSSION

In *Apprendi*, the United States Supreme Court examined whether a fact that increases the penalty for a crime beyond its statutory maximum must be submitted to a jury and proved beyond a reasonable doubt.

The facts of the *Apprendi* case revealed that Apprendi had fired several shots into the home of an African-American family. The family had recently moved into Apprendi's neighborhood. When questioned by police shortly after the shooting, Apprendi stated that " 'because they are black in color he does not want them in the neighborhood.' " (*Apprendi, supra,* 530 U.S. at p. 469 [120 S.Ct. at p. 2351].)

---

[2]On our own motion, we take judicial notice of the record and proceedings concerning his appeal.

Several of the 23 counts with which Apprendi was charged involved the above described incident. None of the counts alleged that Apprendi acted with a racially biased purpose and none referred to the hate crimes statute in New Jersey. Pursuant to a plea agreement, Apprendi pleaded guilty to two counts of second degree possession of a firearm (which carries a prison term of five to ten years) and one count of third degree possession of a bomb. As part of the plea agreement, the state reserved the right to seek a hate crime sentence enhancement, which would allow the sentence to be increased over the maximum allowed sentence for the convictions alone. Apprendi reserved the right to raise constitutional challenges to the hate crime statute.

After the trial court accepted the guilty pleas, it conducted an evidentiary hearing on the question of whether the crime was motivated by racial bias. The trial court found by a preponderance of the evidence that the hate crime enhancement applied and increased Apprendi's sentence above the maximum allowed for the underlying crimes. (*Apprendi, supra,* 530 U.S. at pp. 470-471 [120 S.Ct. at p. 2352].)

Apprendi appealed. The New Jersey Supreme Court affirmed, finding that the hate crime enhancement was validly determined because it was not a separate offense but its nature was that of a sentencing factor. (*Apprendi, supra,* 530 U.S. at p. 472 [120 S.Ct. at p. 2353].) The United States Supreme Court granted certiorari.

The United States Supreme Court traced the history of the right to a jury trial and proof beyond a reasonable doubt for criminal convictions, noting that "[a]ny possible distinction between an 'element' of a felony offense and a 'sentencing factor' was unknown to the practice of criminal indictment, trial by jury, and judgment by court as it existed during the years surrounding our Nation's founding." (*Apprendi, supra,* 530 U.S. at p. 478 [120 S.Ct. at p. 2356], fn. omitted.) The Supreme Court noted: "[N]othing in this history suggests that it is impermissible for judges to exercise discretion— taking into consideration various factors relating both to offense and offender—in imposing a judgment within the range prescribed by statute. We have often noted that judges in this country have long exercised discretion of this nature in imposing sentence within statutory limits in the individual case." (*Id.* at p. 481 [120 S.Ct. at p. 2358], italics omitted.)

"The historic link between verdict and judgment and the consistent limitation on judges' discretion to operate within the limits of the legal penalties provided highlight the novelty of a legislative scheme that removes the jury from the determination of a fact that, if found, exposes the criminal defendant to a penalty exceeding the maximum he would receive if punished

according to the facts reflected in the jury verdict alone." (*Apprendi, supra,* 530 U.S. at pp. 482-483 [120 S.Ct. at p. 2359], italics omitted.)

The Supreme Court recognized that trial practices change over the course of the centuries, but these changes "must at least adhere to the basic principles undergirding the requirements of trying to a jury all facts necessary to constitute a statutory offense, and proving those facts beyond reasonable doubt." (*Apprendi, supra,* 530 U.S. at pp. 483-484 [120 S.Ct. at p. 2359].)

■ A state's authority to legislate facts necessary to constitute a criminal offense is subject to constitutional limitations, and serious constitutional concerns arise when a state scheme keeps from a jury facts that expose a defendant to additional or greater punishment. (*Apprendi, supra,* 530 U.S. at p. 486 [120 S.Ct. at p. 2360].)

Where the exposure to greater punishment arises from recidivism in the form of prior convictions entered in earlier proceedings containing "substantial procedural safeguards," the establishment of the fact of the prior conviction does not raise constitutional questions concerning the right to a jury trial or the standard of proof. (*Apprendi, supra,* 530 U.S. at p. 488 [120 S.Ct. at pp. 2361-2362].)

The *Apprendi* court announced the following rule: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. With that exception, we endorse the statement of the rule set forth in the concurring opinions in [*Jones v. United States* (1999) 526 U.S. 227]: '[I]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established beyond a reasonable doubt.' " (*Apprendi, supra,* 530 U.S. at p. 490 [120 S.Ct. at pp. 2362-2363].)

Petitioner Taylor claims: "Now that the United States Supreme Court holds in Apprendi that a defendant has the Sixth Amendment right to a jury trial on allegations such as the Three Strikes allegation where proof of the priors is an element of the allegation, the California courts must now apply the constitutional protections in deciding whether this petitioner's claim of an invalid jury waiver on the Three Strikes allegation is meritorious."

Relevant to the inquiry whether *Apprendi* expands Taylor's jury trial rights from a creature of statute to a constitutional right is the recent California Supreme Court case of *People v. Epps, supra,* 25 Cal.4th 19. Epps was charged with several crimes and firearm enhancements. In addition, it

was alleged he suffered a prior serious felony conviction for purposes of the three strikes law and a five-year serious felony conviction enhancement. (§ 667.) The prior conviction allegations were bifurcated from the trial of the substantive offenses. After the jury found defendant guilty on all counts and found the firearm enhancements true, the trial court dismissed the jury over defendant's objection. The trial court held a bench trial and found the prior conviction allegations true. (25 Cal.4th at p. 22.) "Defendant appealed, arguing . . . that section 1025 entitled him to a jury trial of the prior conviction allegations." (*Ibid.*)

Citing *Apprendi*, the California Supreme Court began its discussion in *People v. Epps, supra,* 25 Cal.4th 19, by stating, "The right, if any, to a jury trial of prior conviction allegations derives from sections 1025 and 1158, not from the state or federal Constitution." (25 Cal.4th at p. 23.) The California Supreme Court found that section 1025 as amended in 1997 left little for the jury to do except to determine whether the documents offered to prove the prior convictions are authentic and if authentic, " '*are sufficient to establish that the convictions the defendant suffered are indeed the ones alleged.*' " (25 Cal.4th at p. 27.) The Supreme Court concluded "that the 1997 amendment to section 1025 greatly restricted, but did not eliminate the right to a jury trial of prior conviction allegations."[3] (25 Cal.4th at p. 28.)

The California Supreme Court went on to find that the trial court's error of depriving defendant of his right to a jury trial of the prior conviction allegations was subject to the harmless error test of *People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]. (*People v. Epps, supra,* 25 Cal.4th at pp. 28-30.) In reaching its decision, the *Epps* court, citing *Apprendi*, stated that it need not determine which federal constitutional error standard applied to the case "because the right to a jury trial of the prior conviction allegations in this case is purely a creature of state statutory law." (*Epps, supra,* at p. 29.)

Although repeatedly stating that the right to a jury trial on prior conviction allegations is statutory, the *Epps* court did not rule out the possibility that the prior conviction exception in *Apprendi* might not apply in situations involving contested factual issues. "The Los Angeles County Public Defender as an amicus curiae argues we should reconsider our holding in *Kelii* [*People v. Kelii* (1999) 21 Cal.4th 452 [87 Cal.Rptr.2d 674, 981 P.2d 518]] in light of the high court's decision in *Apprendi, supra,* 530 U.S. 466 [120 S.Ct. 2348],

---

[3]Although the 1997 amendment to section 1025 would not apply to Taylor's case because his trial occurred before this amendment became operative, the key point in *Epps* that bears upon the question now before us does not relate to the language of the amendment, but, more generally, whether the exception carved out by *Apprendi* and relied on in *Epps* is applicable to what occurred here.

and thereby confer a more significant role on the jury. Specifically, amicus curiae argues *Apprendi* gives defendants a right to have a jury decide whether a prior conviction is a serious felony for purposes of the three strikes law. *Apprendi*, however, reaffirms that defendants have no right to a jury trial of 'the fact of a prior conviction' . . . , and here, at least, only the bare fact of the prior conviction was at issue, because the prior conviction (kidnapping) was a serious felony by definition under section 1192.7, subdivision (c)(20). We do not now decide how *Apprendi* would apply if we were faced with a situation like that at issue in *Kelii*, where some fact needed to be proved regarding the circumstances of the prior conviction—such as whether a prior burglary was residential—in order to establish that the conviction is a serious felony." (*People v. Epps*, *supra*, 25 Cal.4th at p. 28.)

In *People v. Kelii*, *supra*, 21 Cal.4th 452, Kelii was convicted of several counts. In addition, the jury found he had suffered three burglary and one attempted burglary prior convictions. After the jury made this finding, the trial court then determined that the prior burglaries and attempted burglaries were *residential* burglaries and were therefore serious felonies because they were of the first degree. Kelii argued on appeal that the jury, not the court, should have determined whether his prior convictions qualified as serious felonies. The California Supreme Court determined that pursuant to sections 1025 and 1158, it is the court, not the jury, that decides whether a prior conviction qualifies as a serious felony for purposes of the three strikes law. (§§ 667, subd. (d)(1), 1170.12, subd. (b)(1).)

In reaching the above determination, the *Kelii* court noted: "Determining whether a prior conviction qualifies as a strike under the Three Strikes law is also the type of inquiry that judges traditionally perform as part of the sentencing function. Often this determination is purely legal, with no factual content whatever. The Three Strikes law defines a strike as, among other things, 'any offense defined in subdivision (c) of Section 1192.7 as a serious felony in this state.' (§§ 667, subd. (d)(1), 1170.12, subd. (b)(1).) Section 1192.7, subdivision (c), lists some felonies that are per se serious felonies, such as murder, mayhem, rape, arson, robbery, kidnapping, and carjacking. If a defendant's prior conviction falls into this group, and the elements of the offense have not changed since the time of that conviction, then the question whether that conviction qualifies as a serious felony is entirely legal." (*People v. Kelii*, *supra*, 21 Cal.4th at p. 456.)

The California Supreme Court distinguished what it labeled as "per se" serious felonies from those which raised factual issues. "Sometimes the determination does have a factual content, just as the question whether convictions were brought and tried separately has a factual content. As we

explained in *Woodell* [*People v. Woodell* (1998) 17 Cal.4th 448 [71 Cal.Rptr.2d 241, 950 P.2d 85]], 'Sometimes the definition of the qualifying prior conviction [§ 1192.7] is not completely congruent with the definition of the crime of which the defendant has [previously] been convicted.' " (*People v. Kelii, supra,* 21 Cal.4th at p. 456.)

The *Kelii* court gave the example of *People v. Guerrero* (1988) 44 Cal.3d 343 [243 Cal.Rptr. 688, 748 P.2d 1150], in which the alleged prior conviction was for a burglary of a residence; the concern in *Guerrero* was that "burglary of a residence" was not specified as a serious felony in the Penal Code. The *Guerrero* court was satisfied "the trier of fact [may] look to the entire record of the conviction" but "no further." (*Guerrero, supra,* at p. 355.) The California Supreme Court held that the trial court properly looked beyond the judgment of conviction to the entire record of the convictions in determining the truth of each of the two prior conviction allegations. (*Id.* at p. 356.)[4] This limited factual inquiry may thus be part of the judge's function as a matter of sentencing. (*People v. Kelii, supra,* 21 Cal.4th at p. 457.)

■ Here, Taylor's prior serious felony convictions were for first degree burglaries, which under the 1991 burglary statute included burglaries of an inhabited "dwelling house," "vessel," or "trailer coach." At the time of Taylor's trial in 1997, the statutory definition of a serious felony included burglary of an inhabited dwelling house or trailer coach or inhabited portion of any other building, but not burglary of a "vessel." A comparison of the language of the statutes alone would result in a finding that a judgment for first degree burglary in 1991 could have been based on burglary of a vessel, yet burglary of a vessel was not specifically included as a serious felony in section 1192.7 at the time of Taylor's trial. Because of this difference it would appear that the trial court would have to look beyond the "bare fact" of the conviction to determine if Taylor's first degree burglary convictions fell within the definition of a serious felony. But the California Supreme Court in *People v. Cruz* (1996) 13 Cal.4th 764 [55 Cal.Rptr.2d 117, 919 P.2d 731] held that the phrase "inhabited dwelling house" as used in section 1192.7 is a broad term and was meant to encompass an inhabited vessel. (*Cruz, supra,* at pp. 776-777.) Thus, although Taylor's first degree burglary convictions are not on their face congruent with the statutory language defining serious felonies, when combined with the case law, the bare fact of

---

[4]The judgment of conviction only establishes proof of each element necessarily adjudicated therein. California courts have struggled with what evidence can be considered when allegations of prior convictions or prior prison terms are involved. (See *People v. Riel* (2000) 22 Cal.4th 1153, 1204-1205 [96 Cal.Rptr.2d 1, 998 P.2d 969].) The record of conviction, as distinct from the judgment of conviction, has been held to include records which may be part of the record on appeal as well as the prior court documents, at least up to the finality of judgment. (*People v. Woodell, supra,* 17 Cal.4th at pp. 454-455.)

the first degree burglary convictions here establish that they are serious felonies. The determination of whether the prior convictions are serious felonies is purely legal, with no factual content whatever. Because there are no contested factual issues, the *Epps* decision applying *Apprendi* is precisely on point.

Taylor's petition is based on the premise that *Apprendi* altered California law and transformed his right to a jury trial on the priors from a statutory right into a constitutional right. As our discussion demonstrates, *Apprendi* determined that the federal Constitution does not entitle an accused to a jury trial to determine the fact of a prior conviction. The fact of a prior conviction was not a matter requiring further proof here; therefore, *Apprendi* did not alter Taylor's entitlement to a jury trial from a statutory right to a constitutional right. Because *Apprendi* does not afford Taylor the relief he seeks, it is unnecessary to discuss the factual details of his claims.[5]

## DISPOSITION

The order to show cause is discharged and the petition for writ of habeas corpus is denied.

Ardaiz, P. J., and Harris, J., concurred.

A petition for a rehearing was denied May 25, 2001, and the opinion was modified to read as printed above. Petitioner's petition for review by the Supreme Court was denied August 29, 2001. Baxter, J., did not participate therein.

---

[5]In his supplemental brief, Taylor asserts we must determine if he was unlawfully denied his statutory right to a jury trial and, if so, whether the error was harmless under *People v. Watson, supra,* 46 Cal.2d 818. Assuming arguendo that Taylor was denied his right to a jury trial, the error was harmless because the record clearly demonstrates that his prior burglary convictions were residential burglaries and were thus serious felonies within the meaning of section 1192.7 in 1997.