[No. F041899. Fifth Dist. Aug. 30, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL D. JOHNWELL, Defendant and Appellant.

## COUNSEL

Kyle Gee, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, Lloyd G. Carter and Brian Alvarez, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

ARDAIZ, J.—By third amended information, defendant Michael D. Johnwell was charged with murder involving the personal use of a firearm and the personal and intentional discharge of a firearm during commission of a felony which proximately caused death (Pen. Code, §§ 187, subd. (a), 12022.5, subd. (a)(1), 12022.53, subd. (d)).[1] A special circumstance of murder during the commission of attempted robbery was also alleged (§ 190.2, subd. (a)(17)). Defendant pled not guilty and denied the special allegations.[2]

---

[1] All statutory references are to the Penal Code.

[2] Reginald D. Duckett was also charged in the original information. His case is not before us at this time.

On or about January 21, 1999, a doubt was declared as to defendant's mental competence and criminal proceedings were suspended pursuant to section 1368. Following a jury trial on the issue, defendant was found competent to stand trial. Criminal proceedings were reinstated, and he was ultimately convicted as charged. The trial court subsequently struck the special circumstance finding, sentenced defendant to a total unstayed term of 50 years to life in prison, and imposed a $10,000 restitution fine. This timely appeal followed.

## FACTS

The circumstances of the underlying offense are not pertinent to the issues raised on appeal. As summarized in the probation officer's report, "On October 11, 1998, Reginald Duckett was in the company of Michael Johnwell when he attempted to rob Hector Hinojos. Johnwell then fired a pistol into the vehicle occupied by Hinojos and Sylvetta Trotter, killing Mr. Hinojos."

## DISCUSSION

## I

## INSTRUCTIONAL ERROR AT COMPETENCY TRIAL

A. *Facts*

As previously noted, on or about January 21, 1999, a doubt was declared as to defendant's mental competence and criminal proceedings were suspended pursuant to section 1368. Psychologists Powell, Hendricksen, and Seymour were appointed to evaluate defendant. At the ensuing jury trial, Dr. Powell testified that defendant was incompetent to stand trial, while Drs. Seymour and Hendricksen both concluded he was competent. The reasons for their opinions, including their assessments of defendant's I.Q. (which ranged from 55, or mildly to moderately retarded, to as high as 90, or well above mental retardation but with intellectual deficit), were explored at length before the jury, as were their educational and employment credentials. In addition, the prosecution presented the testimony of two correctional officers from the jail, who briefly described defendant's conduct in administrative hearings.

At the conclusion of the evidence, the trial court instructed the jury, pursuant to CALJIC No. 4.10 (doubt of present mental competence), that

defendant was presumed to be mentally competent, and that the effect of the presumption was to place upon him the burden of proving, by a preponderance of the evidence, that he was mentally incompetent.[3] It defined preponderance of the evidence pursuant to CALJIC No. 2.50.2 (definition of preponderance of the evidence).[4] It explained the difference between direct and circumstantial evidence, and instructed the jurors that facts could be proved by either or both and that neither type of evidence was entitled to greater weight than the other. Over defense counsel's objection that it would raise the defense's burden of proof, it then gave a modified version of CALJIC No. 2.01 (sufficiency of circumstantial evidence—generally), to wit:

"However, *a finding of mental incompetency may not be based upon circumstantial evidence unless the proved circumstances* are not only one, consistent with the theory the defendant is mentally incompetent; but two, *cannot be reconciled with any other rational conclusion.*

"Further, each fact that is essential to complete a set of circumstances necessary to establish the mental incompetency of the defendant must be proved by a preponderance of the evidence. In other words, before an inference essential to mental incompetency may be found to be proved by a preponderance of the evidence, each fact or circumstance upon which it rests must be proved by a preponderance of the evidence.

"Also, *i[f] the circumstantial evidence permits two reasonable interpretations, one that points to his competency and the other that points to his incompetency, you must adopt that which points to his competency and reject that which points to his incompetency.*

---

[3] The court instructed: "In this proceeding you must decide whether the defendant is mentally competent to be tried for a criminal offense. This is not a criminal proceeding and the innocence or guilt of the defendant of the criminal charge pending against him is not involved nor is the question of his legal insanity at the time of the commission of the alleged offense with which he has been charged. [¶] Although on some subjects his mind may be deranged or unsound, a person charged with a criminal offense is deemed mentally competent to be tried of the crime charged against him if: He is, one, capable of understanding the proceedings and purpose of the proceedings against him; two, he comprehends his own status and condition in reference to proceedings; and three, he is able to assist his attorney in conducting his defense in a rational manner. [¶] The defendant is presumed to be mentally competent. The effect of this presumption is to place upon the defendant a burden of proving by a preponderance of the evidence he is incompetent as a result of a mental disorder or developmental disability."

[4] Jurors were told: "Preponderance of the evidence means evidence that has more convincing force than that opposed to it. If the evidence is so evenly balanced that you are unable to find the evidence on any side of an issue preponderates, your finding on that issue must be against the party who has the burden of bringing it. [¶] You should consider all the evidence bearing on any issue regardless of who produced it."

"If, on the other hand, one interpretation appears to be reasonable and the other interpretation to be unreasonable, you must accept the reasonable interpretation and reject the unreasonable." (Italics added.)

Defendant now says the emphasized portion violated the due process clause of the Fourteenth Amendment to the United States Constitution because it required him to introduce sufficient circumstantial evidence to disprove every rational conclusion and reasonable interpretation other than incompetence, thereby assigning him a higher burden of proof than is constitutionally permissible. The People concede the error, but claim it is properly assessed under the standard applicable to errors of state law and, under that standard, was harmless.

B. *Analysis*

"Trial of an incompetent defendant violates the due process clause of the Fourteenth Amendment to the United States Constitution [citation] and article I, section 15 of the California Constitution. Those protections are implemented by statute in California. A criminal defendant is incompetent and may not be 'tried or adjudged to punishment' if 'as a result of mental disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner.' (§ 1367, subd. (a).) Section 1368 mandates a competency hearing if a doubt as to a criminal defendant's competence arises during trial. That may occur if counsel informs the court that he or she believes the defendant is incompetent (§ 1368, subd. (b)), or '[i]f during the pendency of an action and prior to judgment, a doubt arises in the mind of the judge as to the mental competence of the defendant.' (§ 1368, subd. (a).)" (*People v. Hayes* (1999) 21 Cal.4th 1211, 1281 [91 Cal.Rptr.2d 211, 989 P.2d 645]; accord, *Cooper v. Oklahoma* (1996) 517 U.S. 348, 354 [134 L.Ed.2d 498, 116 S.Ct. 1373]; *Medina v. California* (1992) 505 U.S. 437, 453 [120 L.Ed.2d 353, 112 S.Ct. 2572].)

■ California's competency scheme, which presumes the defendant is competent and places upon him or her the burden of proving incompetence by a preponderance of the evidence (see § 1369, subd. (f)), comports with due process. (*Medina v. California, supra,* 505 U.S. at pp. 446–453.) Such allocation of the burden of proof affects competency determinations "only in a narrow class of cases where the evidence is in equipoise; that is, where the evidence that a defendant is competent is just as strong as the evidence that he is incompetent. [Citation.]" (*Id.* at p. 449.) By contrast, a scheme in which a defendant is presumed to be competent unless he or she proves incompetence by clear and convincing evidence violates due process because it "allows the State to put to trial a defendant who is more likely than not incompetent . . . ." (*Cooper v. Oklahoma, supra,* 517 U.S. at pp. 350, 369.)

■ A trial court has a sua sponte duty to give CALJIC No. 2.01 in criminal cases "where circumstantial evidence is substantially relied upon for proof of guilt . . . ." (*People v. Yrigoyen* (1955) 45 Cal.2d 46, 49–50 [286 P.2d 1].) Although the instruction may also be mandated in civil or quasi-civil cases in which proof beyond a reasonable doubt is required (see, e.g., *Conservatorship of Walker* (1987) 196 Cal.App.3d 1082, 1094–1098 [242 Cal.Rptr. 289]), it has—as the People concede—no application when the standard of proof is preponderance of the evidence.

■ "A trial court must instruct the jury on the allocation and weight of the burden of proof [citations], and, of course, must do so correctly." (*People v. Mower* (2002) 28 Cal.4th 457, 483 [122 Cal.Rptr.2d 326, 49 P.3d 1067].) Had the court here stopped with the giving of CALJIC Nos. 2.50.2 and 4.10, defendant could not be heard to complain. By adding its modified version of CALJIC No. 2.01, however, the trial court effectively placed on defendant the burden not only of producing evidence of his incompetence that was more convincing than not, but also the additional burden of disproving every rational conclusion and reasonable interpretation of the evidence except that which pointed to incompetence. That burden conflicts with, and is higher than, the preponderance standard dictated by California's competency scheme (§ 1369, subd. (f)) and sanctioned by the United States Supreme Court (*Medina v. California, supra,* 505 U.S. at pp. 446–453). Accordingly, and considering the instructions as a whole (see *People v. Smithey* (1999) 20 Cal.4th 936, 963 [86 Cal.Rptr.2d 243, 978 P.2d 1171]), the giving of the modified version of CALJIC No. 2.01 at defendant's competency trial constituted error.[5]

■ The real question here is, by what standard do we judge the error? The failure to give CALJIC No. 2.01, where appropriate, is assessed under the standard of *People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243] (*Watson*), i.e., reversal is required only when the reviewing court finds, after an examination of the entire cause, that it is reasonably probable a result more favorable to the defendant would have been reached in the absence of the error. (See, e.g., *People v. Bender* (1945) 27 Cal.2d 164, 175–176 [163

---

[5] This is so even if we assume that CALJIC No. 2.01, as modified, merely created an ambiguity in the instructions. Under such circumstances, "[o]nce we have ascertained the relevant law, we determine the meaning of the instructions in this regard. Here the question is whether there is a 'reasonable likelihood' that the jury understood the charge as the defendant asserts. [Citations.] 'In addressing this question, we consider the specific language under challenge and, if necessary, the charge in its entirety. [Citation.] Finally, we determine whether the instruction, so understood, states the applicable law correctly.' [Citation.]" (*People v. Kelly* (1992) 1 Cal.4th 495, 525–526 [3 Cal.Rptr.2d 677, 822 P.2d 385]; accord, *Estelle v. McGuire* (1991) 502 U.S. 62, 72 [116 L.Ed.2d 385, 112 S.Ct. 475].) Given the plain language of CALJIC No. 2.01, as given, and the fact that much of the evidence before the jury was circumstantial (which the People do not dispute), we conclude there is a reasonable likelihood the jury understood the charge as defendant asserts.

P.2d 8], overruled on other grounds in *People v. Lasko* (2000) 23 Cal.4th 101, 110 [96 Cal.Rptr.2d 441, 999 P.2d 666].) Here, of course, CALJIC No. 2.01 should not have been given at all. Defendant contends that because the instruction as modified required him to shoulder a burden greater than the preponderance-of-the-evidence standard which is constitutionally permissible, we must apply the standard of *Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 87 S.Ct. 824] *(Chapman)*, i.e., the People must show the error was harmless beyond a reasonable doubt or reversal is required. The People, on the other hand, point to the fact that the right to a jury determination of competency is statutory and not constitutional. (See *People v. Lawley* (2002) 27 Cal.4th 102, 131 [115 Cal.Rptr.2d 614, 38 P.3d 461].) Because defendant's competency jury trial "was a matter of Legislative grace" and "entirely a creature of California statute" and not constitutionally compelled, the argument runs, the instructional error should be reviewed under the *Watson* standard, which is applicable to errors of state law.

"Although it arises in the context of a criminal trial, a competency hearing is a special proceeding, governed generally by the rules applicable to civil proceedings. [Citation.]" *(People v. Lawley, supra,* 27 Cal.4th at p. 131.) The standard of prejudice for the giving of an erroneous instruction in an ordinary civil case is essentially that of *Watson*: "Instructional error in a civil case is prejudicial 'where it seems probable' that the error 'prejudicially affected the verdict.' [Citations.]" *(Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 580 [34 Cal.Rptr.2d 607, 882 P.2d 298] .) This does not mean, however, that the *Watson* standard applies simply because a trial on the issue of competency is not a true criminal proceeding. (See, e.g., *People v. Hurtado* (2002) 28 Cal.4th 1179, 1190–1194 [124 Cal.Rptr.2d 186, 52 P.3d 116] [*Chapman* standard applicable to failure to instruct on element essential to commitment under Sexually Violent Predators Act, a civil proceeding].)

As support for their argument, the People rely on cases finding the *Watson* standard applicable to the erroneous denial of a jury trial. For example, in *People v. Epps* (2001) 25 Cal.4th 19 [104 Cal.Rptr.2d 572, 18 P.3d 2], the California Supreme Court applied *Watson* to the erroneous deprivation of a jury trial on the issue of prior conviction allegations. The court noted that the right to a jury trial on the prior conviction allegations was "purely a creature of state statutory law"; "[w]hen a state need not provide a jury trial at all, it follows that the erroneous denial of that right does not implicate the federal Constitution. [Citations.] Moreover, because the error is purely one of state law, the *Watson* harmless error test applies. [Citations.]" *(Id.* at p. 29; accord, *In re Taylor* (2001) 88 Cal.App.4th 1100, 1102 [106 Cal.Rptr.2d 454]; see *People v. Masterson* (1994) 8 Cal.4th 965, 972–973 [35 Cal.Rptr.2d 679, 884 P.2d 136] [defense counsel can waive right to jury trial on issue of competency even over the defendant's objection].) In *People v. Cosgrove* (2002) 100 Cal.App.4th 1266 [123 Cal.Rptr.2d 535], the Court of Appeal applied the

*Watson* standard where the trial court erroneously directed a verdict in the trial of a defendant alleged to be a mentally disordered offender (MDO). The court concluded the *Watson* standard was applicable because a defendant's right to a jury trial in an MDO proceeding—which is civil in nature—is purely statutory. (*Id.* at pp. 1273–1276; accord, *People v. Montoya* (2001) 86 Cal.App.4th 825, 831–832 [103 Cal.Rptr.2d 579].) Somewhat similarly, in *People v. Wims* (1995) 10 Cal.4th 293, 304, 313–315 [41 Cal.Rptr.2d 241, 895 P.2d 77], the California Supreme Court found the *Watson* standard to be applicable, based on the lack of a federal constitutional right to trial by jury on the issue, to a failure to instruct on the elements of an enhancement allegation.[6]

■ It is clear from the foregoing that a less exacting standard of prejudice frequently applies in proceedings which carry only a statutory right to a jury trial, as opposed to those in which a trial by jury is a matter of right under the federal Constitution. Moreover, we recognize that, as in the case of an MDO proceeding, a jury in a competency trial "does not impose criminal punishment and has no power to determine the extent to which the defendant will be deprived of his liberty." (*People v. Montoya, supra,* 86 Cal.App.4th at p. 832; contrast *Conservatorship of Wilson* (1982) 137 Cal.App.3d 132, 135–136 [186 Cal.Rptr. 748] [finding that person is gravely disabled for purposes of involuntary commitment under Lanterman-Petris-Short Act may result in serious deprivation of personal liberty].)

■ Nevertheless, we conclude that the appropriate standard of prejudice in the instant case is the harmless-beyond-a-reasonable-doubt standard of *Chapman*. The right to a jury trial in a competency proceeding may be only statutory, but a defendant's right not to be put to trial when he or she is more likely than not incompetent, is constitutional. (See *Cooper v. Oklahoma, supra,* 517 U.S. at p. 369.) "Indeed, the right not to stand trial while incompetent is sufficiently important to merit protection even if the defendant has failed to make a timely request for a competency determination. [Citation.]" (*Id.* at p. 354, fn. 4.)

" 'The function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of factfinding, is to "instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of

---

[6] This conclusion has since been undermined by the United States Supreme Court's holding in *Apprendi v. New Jersey* (2000) 530 U.S. 466 [147 L.Ed.2d 435, 120 S.Ct. 2348]. (*People v. Sengpadychith* (2001) 26 Cal.4th 316, 324–326 [109 Cal.Rptr.2d 851, 27 P.3d 739]; see *People v. Prieto* (2003) 30 Cal.4th 226, 256–257 [133 Cal.Rptr.2d 18, 66 P.3d 1123].) Significantly, no misdescription of the burden of proof was involved. (*People v. Wims, supra,* 10 Cal.4th at p. 313.)

adjudication." [Citation.]' [¶] The 'more stringent the burden of proof a party must bear, the more that party bears the risk of an erroneous decision.' [Citation.]" (*Cooper v. Oklahoma, supra,* 517 U.S. at pp. 362–363.) Where a presumption of competence and the standard of proof affect "only the narrow class of cases in which the evidence on either side [is] equally balanced"—as where the defendant need only demonstrate his or her incompetence by a preponderance of the evidence—there is no "significant risk of an erroneous determination that the defendant is competent." (*Id.* at p. 363.) Placing a more onerous burden on the defendant, however, instead of " 'jealously guard[ing],' [citation], an incompetent criminal defendant's fundamental right not to stand trial," imposes just such a risk. (*Ibid.*) "For the defendant, the consequences of an erroneous determination of competence are dire. Because he lacks the ability to communicate effectively with counsel, he may be unable to exercise other 'rights deemed essential to a fair trial.' [Citation.] After making the 'profound' choice whether to plead guilty, [citation], the defendant who proceeds to trial 'will ordinarily have to decide whether to waive his "privilege against compulsory self-incrimination," [citation], by taking the witness stand; if the option is available, he may have to decide whether to waive his "right to trial by jury," [citation]; and, in consultation with counsel, he may have to decide whether to waive his "right to confront [his] accusers," [citation], by declining to cross-examine witnesses for the prosecution.' [Citation.] With the assistance of counsel, the defendant also is called upon to make myriad smaller decisions concerning the course of his defense. The importance of these rights and decisions demonstrates that an erroneous determination of competence threatens a 'fundamental component of our criminal justice system'—the basic fairness of the trial itself. [¶] By comparison to the defendant's interest, the injury to the State of the opposite error—a conclusion that the defendant is incompetent when he is in fact malingering—is modest." (*Id.* at pp. 364–365, fn. omitted.) "More fundamentally, while the difficulty of ascertaining where the truth lies may make it appropriate to place the burden of proof on the proponent of an issue, it does not justify the additional onus of an especially high standard of proof." (*Id.* at p. 366.)

"The deep roots and fundamental character of the defendant's right not to stand trial when it is more likely than not that he lacks the capacity to understand the nature of the proceedings against him or to communicate effectively with counsel mandate constitutional protection." (*Cooper v. Oklahoma, supra,* 517 U.S. at p. 368.) Here, jurors were informed of the correct burden and standard of proof in a general sense. To the extent they found circumstantial evidence, however (and, as we have noted, the People do not refute defendant's assertion that most, if not all, of the evidence was

circumstantial), the modified version of CALJIC No. 2.01 instructed them to hold defendant to a higher standard. Because of its deleterious effect on the standard of proof, the instructional error here denied defendant "a reasonable opportunity to demonstrate that he is not competent to stand trial." (*Medina v. California, supra,* 505 U.S. at p. 451; see *Pate v. Robinson* (1966) 383 U.S. 375, 386 [15 L.Ed.2d 815, 86 S.Ct. 836] [the defendant's constitutional rights abridged by failure to receive adequate hearing on competence].) It implicated defendant's "fundamental right not to stand trial while incompetent"; accordingly, it must be judged in terms of its compatibility "with the dictates of due process." (*Cooper v. Oklahoma, supra,* 517 U.S. at p. 369.) In short, assessment under the *Chapman* standard is required. (See *People v. Noble* (2002) 100 Cal.App.4th 184, 191 [121 Cal.Rptr.2d 918] [conflicting instructions on burden of proof in MDO trial assessed under *Chapman*].)

In light of the foregoing, before we can affirm, we must "be able to declare a belief that [the error] was harmless beyond a reasonable doubt." (*Chapman, supra,* 386 U.S. at p. 24.) The test, under this standard, "is 'whether it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." ' [Citations.] . . . 'To say that an error did not contribute to the verdict is . . . to find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record.' [Citation.]" (*People v. Flood* (1998) 18 Cal.4th 470, 494 [76 Cal.Rptr.2d 180, 957 P.2d 869].) As the United States Supreme Court explained in *Sullivan v. Louisiana* (1993) 508 U.S. 275, 279 [124 L.Ed.2d 182, 113 S.Ct. 2078], "the question [*Chapman*] instructs the reviewing court to consider is not what effect the constitutional error might generally be expected to have upon a reasonable jury, but rather what effect it had upon the guilty verdict in the case at hand. [Citation.] Harmless-error review looks . . . to the basis on which 'the jury *actually rested* its verdict.' [Citation.] The inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error."

The People have not made the slightest attempt to meet this standard, an omission we view as a tacit concession they cannot do so. Although there is certainly sufficient evidence to support the jury's finding of competency, that evidence is far from overwhelming. While the parties did not argue the applicability of the instruction to the facts of the case, as the People note, neither did they clarify or correct the erroneous burden the instruction placed on defendant insofar as circumstantial evidence was concerned. The People point out that the court instructed the jury with CALJIC No. 17.31 (all instructions not necessarily applicable), and say we should presume the jury

followed this instruction.[7] It is, of course, axiomatic that " '[t]he crucial assumption underlying our constitutional system of trial by jury is that jurors generally understand and faithfully follow instructions.' [Citation.]" (*People v. Delgado* (1993) 5 Cal.4th 312, 331 [19 Cal.Rptr.2d 529, 851 P.2d 811]; accord, *Weeks v. Angelone* (2000) 528 U.S. 225, 234 [145 L.Ed.2d 727, 120 S.Ct. 727]; *People v. Osband* (1996) 13 Cal.4th 622, 714 [55 Cal.Rptr.2d 26, 919 P.2d 640].) The People offer no reason why jurors would have concluded CALJIC No. 2.01 did not apply; given the significant amount of circumstantial evidence presented at trial by both parties, such a conclusion would be illogical. Hence, we presume jurors understood and faithfully followed the version of CALJIC No. 2.01 which was given to them. Considering the evidence presented at the competency trial and the instructions as a whole, it is not possible for us to tell whether the jury returned a verdict of competence because defendant failed to establish his incompetence by a preponderance of the evidence, or because he failed to negate any and all rational conclusions to be drawn from the circumstantial evidence except those which pointed to his incompetence. (See *People v. Noble, supra,* 100 Cal.App.4th at p. 191.)

The People point to post-competency-trial proceedings and say a review of defendant's performance therein, including his testimony at trial, "reveals irrefutable evidence that defendant was competent." However, the only case cited as authority for our being able to consider subsequent events—*People v. Dudley* (1978) 81 Cal.App.3d 866 [146 Cal.Rptr. 767] (*Dudley*)—is distinguishable. In that case, a competency hearing was held prior to trial and the trial judge found the defendant competent to stand trial. On appeal, the defendant assigned as error that judge's failure, sua sponte, to suspend proceedings and reopen the section 1368 hearing when, midtrial, he received information that the defendant had been found not competent to stand trial in another proceeding pending before a different judge. (*Dudley, supra,* at pp. 870–871.) The appellate court rejected the defendant's contention that he was entitled to a second hearing before the judge who found him competent, noting that section 1368 requires a hearing when substantial evidence casts doubt on a defendant's present mental competence. The court found that the first judge's knowledge of the second judge's decision "did not constitute that kind of substantial evidence which would compel us to hold, *as a matter of law*, that [the first judge] should have vacated his own decision on the issue." (*Dudley, supra,* at p. 872.) The appellate court concluded: "The transcript of the trial including

---

[7] Pursuant to CALJIC No. 17.31, the court told the jurors: "The purpose of the Court's instructions is to provide you with the applicable law so you may arrive at a just and lawful verdict. Whether some instructions apply will depend on what you find to be the facts. Disregard any instructions which applies [*sic*] to facts determined by you to not exist. Do not conclude that because an instruction has been given I am expressing an opinion as to the facts."

defendant's performance on the witness stand constitutes irrefutable evidence of the correctness of [the first judge's] decision. [That judge] had a far greater opportunity to observe defendant than did [the second judge] and the reports of the [doctors appointed by the first judge] are, in our opinion, considerably more persuasive than those of the doctors who reported to [the second judge]. [¶] Aside from the simple fact that [the second judge] reached a different conclusion, defendant has advanced no factual matters nor legal argument bearing on the correctness of [the first judge's] ruling." (*Ibid.*)

As is apparent, *Dudley* was concerned with whether a *second* competency hearing should have been held. As the California Supreme Court has explained, "When a competency hearing has already been held and the defendant has been found competent to stand trial . . . , a trial court need not suspend proceedings to conduct a second competency hearing unless it 'is presented with a substantial change of circumstances or with new evidence' casting a serious doubt on the validity of that finding. [Citations.]" (*People v. Jones* (1991) 53 Cal.3d 1115, 1153 [282 Cal.Rptr. 465, 811 P.2d 757]; accord, *People v. Kelly, supra,* 1 Cal.4th at p. 542; *People v. Melissakis* (1976) 56 Cal.App.3d 52, 62 [128 Cal.Rptr. 122].)

■ It is one thing to say the record—including subsequent events—supports a trial court's determination not to afford a defendant a second competency hearing. It is quite another to rely on posttrial events to cure an instructional error which affected the standard of proof at the competency trial and which we cannot say had no effect on the finding of competence. An appellate court's determination of whether sufficient evidence supports a jury's finding of competency "is limited to the evidence before the court at the time of the competency hearing. [Citation.]" (*People v. Marks* (2003) 31 Cal.4th 197, 219, fn. 3 [2 Cal.Rptr.3d 252, 72 P.3d 1222].) Similarly, the erroneous pretrial denial of a competency hearing cannot be cured " 'by a retrospective determination of defendant's mental competence during his trial.' [Citation.]" (*People v. Stankewitz* (1982) 32 Cal.3d 80, 94 [184 Cal.Rptr. 611, 648 P.2d 578]; see also *People v. Hale* (1988) 44 Cal.3d 531, 540–541 [244 Cal.Rptr. 114, 749 P.2d 769] [rejecting argument that change in the defendant's mental condition before trial obviated need for competency hearing once doubt arose as to competence].) We fail to see why the erroneous denial of a competency hearing that comports with the requirements of due process should be treated differently.

Regardless of the fact defendant may have received a fair trial on the issue of guilt, the error here mandates reversal of his conviction. (*Pate v. Robinson, supra,* 383 U.S. at pp. 386–387; *Dusky v. United States* (1960) 362 U.S. 402, 403 [4 L.Ed.2d 824, 80 S.Ct. 788]; *People v. Stankewitz, supra,* 32 Cal.3d at p. 94; see *People v. Superior Court (Marks)* (1991) 1 Cal.4th 56, 70–71 [2

Cal.Rptr.2d 389, 820 P.2d 613]; *People v. Hale, supra,* 44 Cal.3d at p. 541.) If, upon remand, a doubt arises as to his present competence to stand trial, the trial court shall proceed as set out in section 1368 et seq. If no such doubt arises or upon such time as defendant is found competent to stand trial, and assuming the People elect to retry him, a new trial on the issue of guilt shall be held. (See *Pate v. Robinson, supra,* at p. 387; *Dusky v. United States, supra,* at p. 403.)

# II

## STRIKING OF THE SPECIAL CIRCUMSTANCE

In light of our conclusion that reversal is required for error at the competency trial, we need not deal with defendant's claims concerning the trial court's removal of his attorney over his objection. We find it appropriate, however, to address the People's argument that the trial court imposed an unauthorized sentence when it struck the special circumstance finding.

### A. *Facts*

As previously noted, the jury found true the special circumstance allegation that the murder occurred during the commission of an attempted robbery (§ 190.2, subd. (a)(17)). At sentencing, defense counsel pointed out that the codefendant received a determinate term, while another party (who apparently was present in the car with defendant and the codefendant) went free.[8] He noted that defendant did not have a substantial prior record, and argued that justice was not done because, after defendant testified, the prosecution decided to proceed solely on a felony-murder theory, thereby removing from the jury any manslaughter options. Counsel concluded: "In any event, if the Court knows of any way in their power to alleviate the LWOP, I would urge them to do it. Because this case, given that it's on a theory of a felony murder, does not have the—does not need the intent with premeditation, the other aspects, but it can be an accident. And I urge the Court to do all they can do, which in many ways is rather limited." The prosecutor argued that dismissing the special circumstance would not be in the interests of justice, and she pointed out that defendant was the person who actually shot the victim. Defense counsel responded that defendant would still receive 50 years to life in prison, and he urged the court to exercise its discretion to dismiss the special circumstance.

The court cited the cases of *People v. Williams* (1981) 30 Cal.3d 470 [179 Cal.Rptr. 443, 637 P.2d 1029] (*Williams*), which held that a trial court retains

---

[8] The probation officer's report reflects that Reginald Duckett pled guilty to various offenses and was sentenced to prison for 15 years eight months.

jurisdiction under section 1385 to dismiss a jury's finding of special circumstances in the furtherance of justice, and *People v. Ames* (1989) 213 Cal.App.3d 1214 [261 Cal.Rptr. 911], in which this court held that *Williams* did not permit a trial court to strike a special circumstance that was part of a negotiated plea agreement. The prosecutor asked for and received time to research the issue; at the continued hearing, she argued that the factors guiding discretion, as listed in *Williams* and its progeny, did not support striking the special circumstance.

In sentencing defendant, the trial court noted that the only issue before it was the propriety of a sentence of life in prison without the possibility of parole. The court stated:

"The driver of the vehicle, Duckett, who was also equally culpable under the felony murder doctrine, not only has the possibility of parole, but the certainty of parole by virtue of his fortuitous plea bargain. Should [defendant], who was nevertheless and at a minimum to receive a 50 years to life sentence, a severe and substantial punishment, be foreclosed from the possibility, not the guarantee or probability, but the possibility of parole behind a 50 year to life sentence.

"Under all the facts and circumstances, including the disposition of the driver, and non-prosecution of the party in the middle seat, a sentence of life without the possibility of parole does not appear to be appropriate, fair or just.

"Yesterday the Court referred to the *Williams* case . . . , which relates the discretion the Court does have. . . .

"And this exercise of discretion should not be understood to mean that the evidence as to the charge of first degree felony murder is insufficient. . . . Instead, the exercise of discretion is now going only to the issue of punishment, appropriate and fair punishment, in the exercise of discretion pursuant to Penal Code Section 1385. [¶] . . . [¶]

"In any event, considering the totality of this case, the age of the Defendant, his lack of a substantial or significant record, the disposition of the co-participants, one of whom is guaranteed a parole date as we speak, the severity of the sentence the Court is about to impose, juxtaposed against the second degree possibility, which Defendant rejected or did not consider, the disproportionality for the life without parole sentence which this presents, the Defendant's ultimate acknowledgment of responsibility, which his statement to the officers reflects and, yes, even in his testimony the Court's view reflects. All of these factors together, not singly, warranted the

Court's exercise of discretion to dismiss or striking of the special circumstance finding. . . . If the argument of the People is taken to its logical extension, the jury's finding is binding and nonreviewable. This is not what *Williams* holds. In fact, the holding of *Williams* was due to the trial court's feeling, as the People now argue, i.e., that the Court felt in *Williams*, the trial court, that he had no discretion. And as I stated earlier, the case was reversed because the Court, in fact, did have this discretion. [¶] . . . [¶]

· "Accordingly, for the punishment purposes only, and for the reasons stated, the Court does hereby strike or dismiss the special circumstance allegation only."

The People now say the trial court violated section 1385.1, and imposed an unauthorized sentence, when it struck the special circumstance finding. Defendant disputes this premise and argues the People needed to appeal in order to challenge the action. Since the People did not do so, the argument runs, the issue is waived.

B. *Analysis*

Section 1385.1, which was added by initiative measure (Prop. 115) approved June 5, 1990, and which supercedes the cases on which the trial court relied (see *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 521 [53 Cal.Rptr.2d 789, 917 P.2d 628]), provides: "Notwithstanding Section 1385 or any other provision of law, a judge shall not strike or dismiss any special circumstance which is admitted by a plea of guilty or nolo contendere or is found by a jury or court as provided in Sections 190.1 to 190.5, inclusive." The language of the statute clearly and unmistakably prohibited the trial court from doing what it did. The question before us is whether the People can raise the issue without themselves appealing; if so, there is no impediment to the prosecution again pursuing a special circumstance allegation upon remand.

"The People's right to appeal is statutory, and appeals that do not fall within the exact statutory language are prohibited. [Citation.]" (*People v. McDougal* (2003) 109 Cal.App.4th 571, 580 [135 Cal.Rptr.2d 160]; accord, *People v. Ibanez* (1999) 76 Cal.App.4th 537, 542 [90 Cal.Rptr.2d 536].) Section 1238 specifies the judgments and orders from which the People may appeal, and there seems little doubt that, had they filed their own notice of appeal, they could have challenged the trial court's ruling pursuant to one or more subdivisions of the statute.[9]

---

[9] Section 1238 provides in pertinent part: "(a) An appeal may be taken by the people from any of the following: [¶] . . . [¶] (6) An order modifying the verdict or finding by reducing the degree of the offense or the punishment imposed or modifying the offense to a lesser offense.

■ Where a sentence is unauthorized, the People are permitted to challenge it either by way of their own appeal (§ 1238, subd. (a)(10)), *or* on a defendant's appeal. This is so because such a sentence is subject to judicial correction whenever the error comes to the attention of the trial court or a reviewing court. (*People v. Serrato* (1973) 9 Cal.3d 753, 763 [109 Cal.Rptr. 65, 512 P.2d 289], disapproved on other grounds in *People v. Fosselman* (1983) 33 Cal.3d 572, 583, fn. 1 [189 Cal.Rptr. 855, 659 P.2d 1144]; *People v. Crooks* (1997) 55 Cal.App.4th 797, 810 [64 Cal.Rptr.2d 236]; *People v. Irvin* (1991) 230 Cal.App.3d 180, 190–191 [281 Cal.Rptr. 195].) The same holds true for a sentence entered in excess of jurisdiction. (*People v. Smith* (2001) 24 Cal.4th 849, 852–853 [102 Cal.Rptr.2d 731, 14 P.3d 942]; *People v. Castello* (1998) 65 Cal.App.4th 1242, 1246, fn. 2 [77 Cal.Rptr.2d 314].)

"[A] sentence is generally 'unauthorized' where it could not lawfully be imposed under any circumstance in the particular case. Appellate courts are willing to intervene in the first instance because such error is 'clear and correctable' independent of any factual issues presented by the record at sentencing. [Citation.]" (*People v. Scott* (1994) 9 Cal.4th 331, 354 [36 Cal.Rptr.2d 627, 885 P.2d 1040].) "In other words, obvious legal errors at sentencing that are correctable without referring to factual findings in the record or remanding for further findings are not waivable." (*People v. Smith, supra,* 24 Cal.4th at p. 852.)

■ Defendant says the sentence in his case was lawful (i.e., authorized) once the special circumstance finding was stricken. The problem is that, in light of section 1385.1, the trial court was completely without authority to strike the special circumstance finding pursuant to section 1385. This was not an *abuse* of the trial court's discretion; the trial court had no discretion. The sentence was not lawful because the trial court lacked the power to impose it. (*People v. Scott, supra,* 9 Cal.4th at p. 354; see *People v. Cowan* (1987) 194 Cal.App.3d 756, 758–760 [239 Cal.Rptr. 796] [trial court acted in excess of

---

[¶] . . . [¶] (8) An order or judgment dismissing or otherwise terminating all or any portion of the action including such an order or judgment after a verdict or finding of guilty . . . . [¶] . . . [¶] (10) The imposition of an unlawful sentence . . . . As used in this paragraph, 'unlawful sentence' means the imposition of a sentence not authorized by law or the imposition of a sentence based upon an unlawful order of the court which strikes or otherwise modifies the effect of an enhancement or prior conviction."

Were we to find the People could *not* appeal, we would address their argument pursuant to section 1252, which states in part: "On an appeal by a defendant, the appellate court shall, in addition to the issues raised by the defendant, consider and pass upon all rulings of the trial court adverse to the State which it may be requested to pass upon by the Attorney General." (See *People v. Braeseke* (1979) 25 Cal.3d 691, 698–701 [159 Cal.Rptr. 684, 602 P.2d 384], vacated *sub nom. California v. Braeseke* (1980) 446 U.S. 932 [64 L.Ed.2d 784, 100 S.Ct. 2147], reiterated *People v. Braeseke* (1980) 28 Cal.3d 86 [168 Cal.Rptr. 603, 618 P.2d 149].)

jurisdiction where it struck § 1203.066 allegations pursuant to § 1385, despite language in § 1203.066 specifically prohibiting use of § 1385 to strike allegations; "correction of the error was compelled"].)

Defendant points to language employed by the trial court which he says was consistent with "proportionality" and "fairness" considerations, and he asks how we can conclude the trial court here was not exercising power under the cruel or unusual punishment clause of article I, section 17, of the California Constitution. (See *People v. Dillon* (1983) 34 Cal.3d 441 [194 Cal.Rptr. 390, 668 P.2d 697]; *In re Lynch* (1972) 8 Cal.3d 410 [105 Cal.Rptr. 217, 503 P.2d 921].) Such an exercise of power, he says, cannot be addressed on appeal independent of any factual issues presented by the sentencing record, and so we should not intervene in the first instance. (See *People v. Smith, supra,* 24 Cal.4th at p. 852; *People v. Scott, supra,* 9 Cal.4th at p. 354.) Defendant ignores the fact that the court expressly stated it was exercising discretion pursuant to section 1385, and its minutes reflect that basis—and *only* that basis—for its ruling.

The sentence was unauthorized. Accordingly, the People properly could raise the issue without objecting on the same ground in the trial court and without separately taking their own appeal. Pursuant to section 1385.1, the trial court was without authority to strike the special circumstance finding. The People are free to pursue such an allegation upon remand.

## DISPOSITION

The judgment is reversed and remanded for proceedings consistent with the opinion.

Harris, J., and Gomes, J., concurred.